133 N.J. Super. 554 (1975)
337 A.2d 647
NATIONAL FREIGHT, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
HAROLD OSTROFF; BENJAMIN BERGSTEIN, INDIVIDUALLY AND T/A CARMEL LUMBER CO.; YETTA BERGSTEIN AND MAX EISENMAN, INDIVIDUALLY AND T/A BONANZA CLOTHES, JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS.
Superior Court of New Jersey, Law Division.
April 24, 1975.
*555 Mr. Robert N. McAllister for plaintiff (Messrs. Valore, McAllister, DeBrier, Aron & Westmoreland, attorneys).
Mr. Marvin Perskie for defendant Harold Ostroff (Messrs. Perskie & Callinan, attorneys).
Mr. Seymour Wasserstrum for defendants Benjamin Bergstein and Yetta Bergstein.
Mr. Matthew Aaron for defendant Max Eisenman.
MILLER, J.C.C., Temporarily Assigned.
On July 25, 1974, and subsequent thereto, over 100 criminal complaints issued out of Vineland Municipal Court against defendant Harold Ostroff charging him with larceny, embezzlement, forgery and conspiracy to defraud plaintiff National Freight. The complaints were forwarded for consideration by the Cumberland County grand jury on August 9, 1974. No indictments have been returned to date.
On January 29, 1975 National Freight filed a civil complaint against Ostroff and other defendants seeking compensatory and punitive damages. Both criminal and civil complaints appear to have the same factual basis. Ostroff now moves to place the civil matter on the inactive list pending conclusion of the criminal charges against him. He claims that a complete defense to the civil action would necessitate full revelation of any defense to the criminal charges, thereby compromising his Fifth Amendment rights.
*556 The case appears novel in New Jersey.
In Sternberg v. Michigan State Bar, 384 Mich. 588, 185 N.W.2d 395 (Sup. Ct. 1971), an attorney moved to stay a bar grievance proceeding on the ground that his testimony in the hearing could be used against him in a pending criminal prosecution for embezzlement. Denial of this motion was upheld.
State v. Schauenberg, 197 Iowa 445, 197 N.W. 295 (Sup. Ct. 1924), involved a suit to enjoin a liquor nuisance. The same facts gave rise to a pending indictment against defendant charging him with maintaining a nuisance. Defendant moved for a continuance on the ground, among others, that he would be compelled to take the witness stand and testify concerning matters involved in the criminal case and would, therefore, be deprived of his constitutional rights. His motion was denied.
Other cases with similar results are Poston v. Home Insurance Co. of New York, 191 S.C. 314, 4 S.E.2d 261 (Sup. Ct. 1939), Lowe v. Lowe, 293 S.W. 915 (Tex. Civ. App. 1927), and Fagan v. Powell, 237 So.2d 579 (Fla. App. 1970).
In DeVita v. Sills, 422 F.2d 1172 (3 Cir.1970), plaintiff, a member of the New Jersey Bar and a judge of the Union County District Court, sought to restrain a state judicial inquiry looking toward the attorney's disbarment and removal from judicial office. He alleged that a criminal indictment arising out of the same alleged misconduct was pending and claimed that holding such judicial inquiry prior to completion of the criminal prosecution would violate his right against self-incrimination.
Recognizing that granting the attorney's motion would create countervailing possibilities of prejudice to civil litigants, the Third Circuit Court of Appeals denied him the relief sought, stating:
But, says the plaintiff, I will nevertheless be put to a difficult choice, and the Fifth Amendment should be so construed that one is not faced *557 with the compulsion to add his own possibly affirmative good impression to weight of evidence in the disciplinary hearing before the criminal trial.
This argument proves too much, for it applies with equal force to every situation where civil and criminal proceedings may arise out of the same factual pattern. If, for example, the charge against an attorney was embezzlement of a client's funds, acceptance of plaintiff's position would require that the wronged client await the completion of a criminal trial before he sought a civil recovery, because of the possible compulsion of the risk of a judgment. The same would be true of every defendant in a wrongful death action; of many taxpayers; of most antitrust defendants. The same would, indeed, be true if instead of a disciplinary proceeding we had before us a proceeding for impeachment of a judge by the New Jersey Legislature pursuant to Article VII, Section III of the New Jersey Constitution.
No authority has come to our attention for so broad a reading of the Fifth Amendment, and the countervailing possibilities of prejudice to civil litigants militates against any such extension of constitutional doctrine.
Plaintiff can, of course, object to depositions or interrogatories directed against him in a civil action where the answers might incriminate him in a pending criminal case. Perry v. McGuire, 36 F.R.D. 272 (S.D.N.Y. 1964); Paul Harrigan & Sons, Inc. v. Enterprise Animal Oil Co., 14 F.R.D. 333 (E.D. Pa. 1953); National Discount Corp. v. Holzbaugh, 13 F.R.D. 236 (E.D. Mich. 1952). But the contention that an actual or potential defendant in a criminal case should not even be put to the difficult choice of having to assert the privilege in a related civil case was rejected in United States v. Kordel, 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 decided on February 24, 1970....
Undoubtedly there are cases in which a court in the exercise of its discretion should stay discovery in a civil action pending the disposition of a criminal case. See, e.g., Texaco, Inc. v. Borda, 383 F.2d 607 (3 Cir.1967), where this court approved the exercise of such discretion by the district court in an antitrust case. But there is no constitutional requirement that this be done, and in the same case some of the limitations which the district court placed upon discovery were found to be an abuse of discretion. Texaco, Inc. v. Borda, supra, at 608. In United States v. American Radiator & Standard San. Corp., 388 F.2d 201, 204 (3 Cir.1967), cert. den. 390 U.S. 922, 88 S.Ct. 857, 19 L.Ed.2d 983 (1968), this court said, with respect to a contention similar to that advanced here:
"On the merits, we know of no rule or equitable principle that protects a defendant in a pending criminal prosecution from the disclosure, by another person in a separate civil action, of evidence which may later become part of the prosecution's case against him."
See also Standard Sanitary Mfg. Co. v. United States, 226 U.S. 20, 52, 33 S.Ct. 9, 57 L.Ed. 107 (1912). Cases such as Campbell v. Eastland, 307 F.2d 478 (5 Cir.1962), cert. denied 371 U.S. *558 955, 83 S.Ct. 502, 9 L.Ed.2d 502 (1963), staying civil discovery against the government until the disposition of the criminal case, are not relevant. They rest on the policy of preventing defendants in criminal cases from using civil process to obtain information from the government's file which would in the criminal case be privileged. That discretionary rule lends no support to plaintiff's constitutional contentions. [at 1178-1181]
There is no absolute rule in New Jersey or elsewhere by which civil actions must be suspended as a matter of right to await the event of an indictment pending in relation to the subject matter of the suit. Instead, the equities and necessity of the particular case must govern. Here the interests of other parties will be jeopardized by a delay of the civil suit. That danger is magnified by the fact that a criminal trial (whether speedy or not) may never occur at all. Indictments have not yet been found and nor is there any certainty that any will be.
Defendant seeks to counterbalance these considerations by asserting his constitutional right not to incriminate himself.
The court is thus presented with two sharply diverging interests. One is the absolute right against self-incrimination under the Fifth Amendment, although in New Jersey the Federal Constitution need not be relied on since the protection against self-incrimination, originally a common law right, has existed in this state since its beginning. Fries v. Brugler, 12 N.J.L. 79, 82 (Sup. Ct. 1830); In re Vince, 2 N.J. 443, 448 (1949); N.J.S.A. 2A:84A-19 (which replaced N.J.S.A. 2A:81-5 and R.S. 2:97-7). There is probably no principle more deeply embedded in Anglo-American jurisprudence and it may well remain the most significant contribution of that jurisprudence to the stream of history.
Competing with this consideration are the rights of plaintiff and other co-defendants. While defendant ought not to be compelled to convict himself criminally, plaintiff and the other parties ought not to be compelled to await the determination of their rights, pending a future course of *559 action which is out of the control of these parties and, indeed, of the court. It must be remembered that the courts must do justice to all parties. In compelling defendant to proceed with this case, the law is not compelling the parties to do anything but disclose the truth. To quote Mr. Justice Burling, "The truth is always the truth, and telling the truth will not hurt anyone except in so far as he ought to be hurt." Vince, supra 2 N.J. at 457.
To say that the civil suit must remain in statu quo indefinitely is to import to the courts an impotency unworthy of them. To compel other parties to sit supinely by while their rights or possibility of recovery are eroded is to invite contempt for the law as well as to permit any guilty party to secrete or dissipate the fruits of his wrongdoing.
The present case has not yet proceeded so far as to criminally jeopardize the defendant. He is not yet required by it to elect whether to avail himself of his privilege against self-incrimination. That choice, still open to him, will come, if at all, if he is required under discovery rules to reveal so much of his case as is demanded of him by his adversary. To accede to defendant's demand in the posture of events would frustrate justice and, as Judge Gibbons pointed out in DeVito, supra at 1180, "He has no constitutional right to be relieved of the burden of that choice." See also People ex rel. Moll v. Danziger, 238 Mich. 39, 213 N.W. 448 (Sup. Ct. 1927), where the court said:
* * * the criminal conduct of defendant which he is not obliged to disclose by his answer would operate as a shield to protect him from the enforcement of his opponents' rights. Such is not the law and cannot be. The constitutional rights of the defendant must be protected, but the constitutional rights of the plaintiff to his day in court must be likewise protected. [213 N.W. at 451]
Defendant's motion is denied. If the question of self-incrimination is raised by him at the present time, he, or, indeed, any party may apply to the court for a protective order sealing the testimony. DeVito, supra at 1180.