176 N.J. Super. 363 (1980)
423 A.2d 648
WHIPPANY PAPER BOARD CO., INC., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
MICHAEL ALFANO, ROBERT K. DRAIN, DOMINICK IAFRATO, JAMES A. DERRICO, JR., JOSEPH DERRICO, BARKER STREET BALING CORP., WEST BRIGHTON MILL SUPPLIES, FRANK IAFRATO CORP., BAY WASTE TRUCKING, J & J SALES CORP. AND INTERSTATE PAPER SALES CORP., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 21, 1980.
Decided November 13, 1980.
*366 Before Judges MATTHEWS, MORGAN and MORTON I. GREENBERG.
Bruce Goldstein argued the cause for appellants Dominick Iafrato, Barker Street Baling Corp., West Brighton Mill Supplies, Frank Iafrato Corp. and Bay Waste Trucking (Saiber, Schlesinger, Satz & Goldstein, attorneys).
Frederick Hafetz of the New York bar, argued the cause for appellants James A. Derrico, Jr., J & J Sales Corp. and Interstate Paper Sales Corp. (Coleman, Segal, Dember & Jaffe, attorneys).
Richard Miller of the New York bar, argued the cause for appellant Joseph Derrico (Rabner & Allcorn, attorneys).
Lowenstein, Sandler, Brochin, Kohl, Fisher & Boylan, attorneys for appellant Michael Alfano.
*367 Diamond, Diamond & Afflitto, attorneys for appellant Robert K. Drain.
Stephen N. Dermer, Bruce I. Goldstein, Mark Z. Segal, Harold Rabner and Joseph T. Afflitto on the joint brief of appellants.
Robert Beller, Assistant United States Attorney, argued the cause for the United States of America, amicus curiae (Robert J. Del Tufo, United States Attorney, attorney; Ronald O. Brown, Assistant United States Attorney, on the brief).
Laurence B. Orloff argued the cause for respondent (Orloff, Lowenbach, Stifelman & Siegel, attorneys; Jeffrey M. Garrod and Marian B. Copeland, on the brief).
The opinion of the court was delivered by MORTON I. GREENBERG, J.A.D.
Plaintiff brought this action on August 21, 1979. The complaint alleged that its former employees, defendants Alfano[1] and Drain, had conspired with the other defendants to cause plaintiff to pay for wastepaper purportedly delivered to it by the corporate defendants when the paper was not in fact delivered or lesser amounts were delivered than the amounts for which plaintiff was charged. In addition, it was alleged that defendants conspired to upgrade the rating of certain paper so that it would meet plaintiff's requirements. Defendants filed answers denying improper conduct and liability. At about the time that the civil complaint was filed, the United States Attorney for the District of New Jersey commenced a criminal investigation of the same matters dealt with in the complaint.
Shortly after institution of this civil case plaintiff served notice that it would take the depositions of the individual defendants Michael Alfano, Joseph Derrico, James A. Derrico, *368 Jr., Dominick Iafrato, Robert K. Drain and a representative of certain of the corporate defendants designated pursuant to R. 4:14-2(c). Additionally, plaintiff requested that the witnesses produce specified documents at the depositions. R. 4:14-2(d). The persons sought to be deposed did not voluntarily appear. Consequently, plaintiff served a motion seeking an order compelling their attendance. Certain defendants served cross-motions requesting a stay of discovery because of the potential criminal proceedings. The motions were heard November 16, 1979. The judge ordered defendants to appear at the depositions and produce the documents demanded by plaintiff. Defendants' cross-motions for a stay were denied. The depositions were then rescheduled. The witnesses appeared but did not answer most questions. They based their refusals to testify on the ground that the answers would tend to incriminate them and thus they had a Fifth Amendment right to refuse to answer.[2] Defendants also refused to produce documents.[3]
Plaintiff then moved to compel defendants to answer specific questions and to produce certain documents. When its motion was originally heard on January 11, 1980 the motion judge considered adopting a procedure by which defendants would be compelled to answer the questions but the transcripts of the depositions would be sealed. Argument was adjourned for two weeks so that the position of the United States Attorney could be determined. An Assistant United States Attorney appeared when the motion was again heard on January 25, 1980. He urged that discovery be stayed. He contended that if defendants *369 testified on depositions they would do so at their own peril and that the United States would not be bound by any order sealing discovery.
Nevertheless, the judge decided to establish a procedure which he felt would protect defendants' Fifth Amendment rights but still permit plaintiff to proceed with discovery. The order which he entered on March 7, 1980 provided that any witness could assert a Fifth Amendment claim not to answer any question or produce any document, but that notwithstanding the claim of privilege the question must be answered or the document produced. The depositions were to be privately conducted and the transcripts sealed. Counsel was limited in his use of information gained at the deposition.[4] Defendants moved for leave to appeal from this order. This court on April 15, 1980 granted their motions and consolidated the appeals. The United States has been permitted to appear as amicus curiae on the appeal.
We note initially that a witness may assert the privilege against self-incrimination in a civil proceeding. Maness v. Meyers, 419 U.S. 449, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975); Mahne v. Mahne, 66 N.J. 53 (1974). And it is not disputed by plaintiff before us that some questions counsel for plaintiff asked could require answers which would tend to be incriminating. In fact, the civil complaint itself alleged conduct of a criminal nature. The United States Attorney indicated at oral argument that the matter is still the subject of a grand jury investigation though no indictments had been returned by that time. Thus we reach the substantial issue of whether the trial court could override defendants' claim of privilege.
We conclude that the trial judge should not have ordered defendants to testify or turn over documents after a *370 proper claim of the privilege against self-incrimination.[5] Though the motion judge indicated that he did not intend to grant immunity by his order, nevertheless the result which he sought to bring about was in fact that. He ruled that defendants must testify but granted a protective order so that their testimony or the fruits thereof would not be available directly or indirectly against them in any criminal proceeding. This order, if effective, would have had the consequence of granting use immunity. See In re Tuso, 73 N.J. 575, 578 (1977); State v. Kenny 68 N.J. 17, 23 (1975); In re Zicarelli, 55 N.J. 249, 265 (1970); aff'd 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972). But under New Jersey law use immunity may be granted only in criminal cases at the request of a county prosecutor with the consent of the Attorney General or at the direct request of the Attorney General. N.J.S.A. 2A:81-17.3.[6] There is no general statute authorizing a trial judge to grant use immunity in a civil action on application of a private litigant. Thus the order of the trial court which, in reality, attempted to create a form of judicial use immunity, was not proper.
A second reason why the order should not have been entered is that the protection afforded by it was, notwithstanding the intentions of the trial judge to protect the witnesses, not as protective as use immunity. The Supreme Court has sustained N.J.S.A. 2A:81-17.3 providing for such immunity on the theory that it is an adequate substitute for the privilege against self-incrimination. In re Tuso, supra, 73 N.J. at 580-581. Here, however, defendants were not formally granted any immunity. *371 Rather, the court tried to give them a judicially created substitute. As such the court could not guaranty that the compelled testimony or its fruits would never be available to other parties because its order could later be changed. Certainly the trial judge retained the power to modify the order during the pendency of the case. R. 4:42-2. Either before or after final judgment the judge had the power, even on application of a nonparty, to unseal the depositions. In United States v. GAF Corp., 596 F.2d 10 (2 Cir.1979), for example, the court was faced with a situation in which the United States sought documents turned over to a party in a private civil case pursuant to a stipulation that they were to be available only for that case.[7] The court held that: "The existence of an outstanding protective order is not in itself fatal to the Government's effort to obtain the documents. Such orders are subject to modification to meet the reasonable requirements of parties in other litigation, for example." 596 F.2d at 16. Thus the United States was permitted to obtain the documents through discovery proceedings.[8]
A third reason why the order should not have been entered is that quite possibly the trial judge may have burdened the United States with an obligation, in a trial against any defendant later indicted, to show that the evidence used in the criminal case against him was obtained from a legitimate source wholly independent of the compelled testimony. This would be similar to the prosecution's burden after a grant of use immunity. Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). We say "possibly" because plaintiff offers no legal precedent directly supporting the procedure followed by the trial judge. Thus we can only surmise what burden would be placed on the United States by this order in subsequent *372 prosecutions. Yet if the burden on the prosecution is any less when testimony is compelled by judicial order without a formal grant of immunity, defendants would receive a poor substitute for their Fifth Amendment protections. We doubt that such a burden should be placed on the United States simply because a plaintiff in a civil case seeks to obtain a defendant's testimony. While we realize that a defendant's testimony may be important to a plaintiff's case, we think that the societal goals underlying the grant of use immunity in criminal matters with the resultant burden placed on the prosecution are absent in a civil case. The public has a greater interest in criminal prosecutions than in private damage cases. Thus the United States should not have to meet the Kastigar test because de facto use immunity has been granted in a civil action. See In re Zicarelli, supra, 55 N.J. at 267 (1970).
As we have indicated, plaintiff cites no case in which a court has compelled a witness to testify notwithstanding a valid claim of privilege absent a grant of immunity. Plaintiff cites a number of tangentially related cases in support of their position, including Martindell v. International Tel. & Tel. Corp., 594 F.2d 291 (2 Cir.1979); Waldbaum v. Worldvision Enterprises, Inc., 84 F.R.D. 95 (S.D.N.Y. 1979); GAF Corp. v. Eastman Kodak Co., 415 F. Supp. 129 (S.D.N.Y. 1976), and D'Ippolito v. American Oil Co., 272 F. Supp. 310 (S.D.N.Y. 1967). But all are distinguishable. In Martindell depositions were taken pursuant to a court-approved stipulation that the transcripts be made available only to the parties. The court held that in those circumstances the United States could not obtain the transcripts for a criminal investigation. In Waldbaum a plaintiff sought to stay an action which he had brought pending disposition of criminal charges against him. The stay was denied but a protective order sealing the deposition was granted. In GAF the court held that the plaintiff could not give the United States documents obtained in discovery in a private lawsuit since the parties to the civil action had agreed to a court order that the documents were produced *373 only for that case.[9]D'Ippolito held that a civil action should not be stayed pending disposition of criminal charges against the defendants but that defendants should be granted a protective order. None of these decisions suggests that a witness could be compelled to testify notwithstanding his valid claim that the answers would tend to incriminate him.
In fact, it is clear that a witness who asserts a valid claim of the privilege of self-incrimination may not be compelled to testify, absent at least the protection of a grant of use immunity.[10] The Supreme Court, in In re Ippolito, supra, held that if a witness is improperly compelled to answer questions notwithstanding a proper claim of the privilege against self-incrimination, the constitutional problem is not solved simply by a holding that his disclosures cannot be used against him in any subsequent criminal prosecutions. While the Supreme Court said that the answers could not be so used, nevertheless it indicated that this protection does not permit circumvention of a proper invocation of the privilege. The court made it clear that only a grant of immunity to a witness will permit a court to order him to answer a question which would otherwise incriminate him. 75 N.J. at 443.
The result we reach does not leave plaintiff without remedy. Plaintiff could seek a stay of discovery until completion of the criminal proceedings.[11] Plainly, a plaintiff seeking a *374 stay in the face of a defendant's refusal to testify would be more deserving of relief than a defendant seeking a similar delay. Defendants are regularly denied stays of civil proceedings pending disposition of criminal actions against them. See DeVita v. Sills, 422 F.2d 1172 (3 Cir.1970); Shaw v. Riverdell Hospital, 150 N.J. Super. 585 (Law Div. 1977); National Freight v. Ostroff, 133 N.J. Super. 554 (Law Div. 1975). But plaintiff might well be entitled to a stay if the trial judge was convinced that discovery which impinges on defendants' right against self-incrimination was critical to plaintiff's case. We are aware that plaintiff has opposed a stay, but its prior opposition was at a time when it could perceive a likelihood of obtaining meaningful discovery from defendants. It is now doubtful that plaintiff will obtain such discovery for some time. Yet we are also aware that a stay might still be unattractive to plaintiff. The passage of time may result in witnesses not being available. Indeed, defendant Alfano has died during the pendency of this action.
Even if plaintiff does not seek a stay of discovery, it would almost certainly be entitled to other relief if defendants persist in the claim of privilege. In Mahne v. Mahne, supra, and Costanza v. Costanza, 66 N.J. 63 (1974), the Supreme Court indicated a reluctance to render a default judgment against a civil defendant who refuses to answer questions on the basis of the privilege against self-incrimination. The court distinguished dismissal of a plaintiff's complaint when he would not answer questions from suppression of an answer when a defendant claims the privilege. 66 N.J. at 59. The reason is plain: a plaintiff invokes the judicial process whereas a defendant is in court involuntarily. These cases make it clear that an appropriate remedy for a plaintiff in the face of a defendant's claim of privilege may be to preclude the party claiming the privilege *375 from testifying at trial. The court, however, did not rule that this was plaintiff's exclusive remedy. Indeed, in Mahne v. Mahne it said: "The plaintiff has the burden of establishing his charge of adultery and there is no suggestion by him that he will be unable to proceed expeditiously with his case without the aid of the pretrial testimony from the defendants." 66 N.J. at 62. At oral argument before us counsel for plaintiff suggested that he in fact may not be able to proceed without discovery from defendants. If he convinces the trial judge of this, that judge may well be justified in striking the answer of a defendant claiming the privilege against self-incrimination and entering judgment against him without proof of the claim or perhaps on the basis of less persuasive evidence than might otherwise be required. See Douglas v. Harris, 35 N.J. 270, 276-277 (1961).
We think we should read Mahne and Costanza as permitting a plaintiff such relief in some cases when a defendant relies on the privilege against self-incrimination to avoid discovery. If those decisions always precluded entry of a default judgment, an anomalous situation could arise. A defendant declining to answer questions without a privilege and persisting in his position notwithstanding a court order to answer could have a default judgment entered against him. R. 4:23-2(b)(3). In such circumstances defendant's conduct resulting in the judgment would likely be less egregious than that of a defendant who could justifiably plead the privilege against self-incrimination to avoid discovery. But if the defendant who justifiably pleads the privilege against self-incrimination as a basis for refusing to answer may not be defaulted, the result would be that in some cases the greater the wrong done the plaintiff the more difficult it would be for him to recover. For example, the victim of a simple automobile accident would have discovery procedures not available to a person seeking damages for a violent assault that could result in criminal charges. The absence of discovery could mean that the latter plaintiff would not be able to establish his claim. It is difficult to justify such a result.
*376 We further note that Mahne and Costanza respectively were a divorce action where the allegedly criminal conduct was adultery and a wrongful death action where defendant allegedly committed murder. Thus in neither case did the defendant asserting the privilege gain at plaintiff's expense. Therefore a judgment for defendant would only avoid a liability; it would not permit defendant to retain improperly acquired property. But here plaintiff asserts a liability of a different character, the essence of which is that defendants have wrongfully taken plaintiff's money. Since it is against public policy for a wrongdoer to profit by his illegal conduct (Small v. Rockfeld, 66 N.J. 231, 245 (1974)), it may well be that if defendants continue to avoid discovery, a default judgment may appropriately be entered against them to avoid that result. Such considerations were not present in either Mahne or Costanza. Thus those cases are distinguishable from this action on the facts.
Defendants raise other objections to the order of March 7, 1980, but in view of the disposition made on their claim that the order of the trial court infringed their valid claim of privilege against self-incrimination, we need not consider these grounds. We further note that nothing in this opinion should be considered as expressing any view on the substantive liability issues in this case. The order of March 7, 1980 is vacated. The matter is remanded to the Superior Court, Law Division, for further proceedings not inconsistent with this opinion. We do not retain jurisdiction. No costs are allowed on this appeal.

APPENDIX
1. Plaintiff's application for an order compelling the defendants to respond to deposition questions and to produce documents, to which the privilege of self-incrimination has been asserted, is granted upon the following terms and conditions and subject to the following limitation:
(A) Any party answering interrogatories, giving depositions or producing documents may assert for the record a Fifth *377 Amendment privilege as to a particular question or document but, immediately thereafter, shall answer the question or produce the document; nothing herein contained shall preclude any party answering interrogatories, answering deposition questions, or producing documents, from asserting other privileges or making other objections as to a particular question or document, as permitted by the Rules of Court and/or the Rules of Evidence. The answering of any question pursuant to this order shall not be deemed a waiver of Fifth Amendment privilege.
(b) No one may be present at any deposition except the party or representative being deposed, the certified shorthand reporter and counsel of record for the parties (including attorneys, law clerks and paralegal assistants).
(c) Upon completion of each party's deposition, the certified shorthand reporter shall prepare a transcript of the proceedings and present it to the attorney who has taken the deposition and the attorney for the party deposed. If requested by him to do so, the certified shorthand reporter may prepare a copy of the transcript for each attorney of record for a party to this action. The certified shorthand reporter shall deliver the original transcript to the Court, sealed. The reporter's notes shall be sealed and no additional transcripts shall be prepared from those notes for any person whatsoever unless specifically ordered by this court.
(d) All certified shorthand reporters transcribing depositions in this matter are specifically enjoined from discussing or disclosing the contents of the testimony or from providing copies of transcripts (except as provided in Subparagraph (c) above) or from reading portions or all of their notes to any person whatsoever without further order of this court. Each shorthand reporter shall be served with a copy of this Order by the attorney retaining him before commencing his work.
(e) Each party to this action, including his agents and representatives, is enjoined from discussing the contents of his deposition with any person whatsoever, other than counsel of record in this action.
*378 (f) All counsel of record in this action, including counsel admitted pro hac vice, and their firms, including partners, associates, clerks, paralegals, and employees, are enjoined from discussing or disclosing the contents of any deposition or interrogatory answer to any person other than other counsel of record in the matter, except that an individual attorney may discuss matters revealed in depositions or interrogatories with his own client, provided that he does not reveal to that client the source of his information.
(g) All parties to this action are enjoined from discussing their own answers to interrogatories with any other person whatsoever other than their counsel.
(h) All counsel and all parties to this lawsuit are enjoined from revealing the contents of or providing copies of documents produced by any party to any other person whatsoever.
NOTES
[1] Alfano died after leave to appeal was granted but of course the case is not moot even as to the issue on the appeal. The record before us does not reflect that his personal representative has been substituted as a party. See R. 4:34-1.
[2] The record before us does not include the complete transcript of the depositions but the parties are in agreement that this is what happened.
[3] The parties make no distinction between oral testimony and production of documents perhaps because the documents are not in the hands of third parties. Compare Maness v. Meyers, 419 U.S. 449, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975), and In re Addonizio, 53 N.J. 107 (1968), with Fisher v. United States, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). Consequently, we treat the claim of privilege as the parties have  that is, applicable or not to both types of evidence. See Evid. R. 25.
[4] The operative parts of the order are set forth in the appendix to this opinion.
[5] We are not concerned on this appeal with a corporate claim of privilege through an individual who himself could not be incriminated by the production of documents. In such case the privilege against self-incrimination could not be asserted. United States v. Kordel, 397 U.S. 1, 7-8, 90 S.Ct. 763, 766, 25 L.Ed.2d 1, 7-8 (1970). Here the claims of privilege were apparently personal.
[6] The State Commission of Investigation may grant use immunity, but that power is not here involved. See N.J.S.A. 52:9M-17; In re Ippolito, 75 N.J. 435 (1978).
[7] See GAF Corp. v. Eastman Kodak Co., 415 F. Supp. 129 (S.D.N.Y. 1976).
[8] There was a further provision for a protective order but its terms are not germane to this opinion. 596 F.2d at 16.
[9] The subsequent efforts of the United States with respect to obtaining the evidence is instructive on the unreliability of any stipulation to seal testimony. See United States v. GAF Corp., supra, discussed above.
[10] Obviously the greater protection of transactional immunity precluding prosecution for the acts concerning which the witness has testified could be given. See In re Tuso, supra, 73 N.J. at 582-590 (Pashman, J., dissenting).
[11] The United States suggests that we stay discovery until the criminal proceedings are completed. Plaintiff objects to the suggestion on the basis that as an amicus the United States may not raise an issue not advanced by the parties. See Endress v. Brookdale Community College, 144 N.J. Super. 109, 123 (App.Div. 1976). We need not consider the standing of the United States on this issue because we would not compel plaintiff to accept a stay. See DeVita v. Sills, 422 F.2d 1172 (3 Cir.1970); Shaw v. Riverdell Hospital, 150 N.J. Super. 585 (Law Div. 1977); National Freight, Inc. v. Ostroff, 133 N.J. Super. 554 (Law Div. 1975).