THE STATE OF NEW JERSEY AND JAMES MCLELLAND SMITH, CHIEF, NEW JERSEY BUREAU OF SECURITIES, PLAINTIFFS–APPELLANTS, v. KOBRIN SECURITIES, INC., A CORPORATION ORGANIZED UNDER THE LAWS OF THE STATE OF NEW JERSEY, ROBERT T. FITZSIMMONS, INDIVIDUALLY AND AS AGENT OF KOBRIN SECURITIES, INC.; LAWRENCE S. REPACE, INDIVIDUALLY AS AGENT FOR KOBRIN SECURITIES, INC.; AND LEONARD BERMAN, INDIVIDUALLY AND AS COMPLIANCE OFFICER AND FINANCIAL PRINCIPAL OF KOBRIN SECURITIES, INC., DEFENDANTS, AND BARRETT R. KOBRIN, INDIVIDUALLY AND AS PRESIDENT, DIRECTOR, AND CHIEF EXECUTIVE OFFICER OF KOBRIN SECURITIES, INC.; RICHARD L. KOBRIN, INDIVIDUALLY AND AS SECRETARY OF KOBRIN SECURITIES, INC.; WARREN SANDY, INDIVIDUALLY AND AS CHIEF FINANCIAL OFFICER OF KOBRIN SECURITIES, INC.; ARMAND DEANGELIS, INDIVIDUALLY AND AS VICE PRESIDENT AND AGENT OF KOBRIN SECURITIES, INC.; ARDEN BROWN, INDIVIDUALLY AND AS VICE PRESIDENT, SECRETARY AND SHAREHOLDER OF KOBRIN SECURITIES, INC.; AND PETER CALCUTTA, INDIVIDUALLY AND AS AGENT OF KOBRIN SECURITIES, INC., DEFENDANTS–RESPONDENTS.

Argued May 2, 1988—Decided August 4, 1988.

*Andrea M. Silkowitz,* Assistant Attorney General, argued the cause for appellant (*Cary Edwards,* Attorney General of New Jersey, attorney; *Nancy Costello Miller,* Deputy Attorney General, on the brief).

*Steven S. Radin,* argued the cause for respondent Barrett R. Kobrin, etc., (*Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross,* attorneys; *Trent S. Dickey,* on the brief).

*Thomas J. Spies* argued the cause for respondent Armand DeAngelis, etc. (*Walder, Sondak, Berkeley & Brogan,* attorneys).

*Jay D. Fischer* argued the cause for respondent Arden Brown, etc. (*Fischer, Kagan, Zaretsky & Scarinci,* attorneys).

*Mark H. Sobel* argued the cause for respondent Richard L. Kobrin, etc. (*Greenbaum, Rowe, Smith, Ravin, Davis & Bergstein,* attorneys).

*Stuart Gold* submitted a letter in lieu of brief on behalf of respondent Warren Sandy, etc. (*Orloff, Lowenbach, Stifelman & Siegel,* attorneys).

*Nicholas E. Caprio* submitted a letter in lieu of brief on behalf of respondent Peter Calcutta, etc. (*Harkavy, Goldman, Goldman & Caprio,* attorneys).

The opinion of the Court was delivered by

O'HERN, J.

The question in this case is whether the State may proceed with a civil fraud action against associated securities dealers while certain of them are subject to pending criminal actions arising out of the same transactions. (We refer thus to the defendants generally. Some were officers of the firm, some were the firm's traders, and some were sales representatives.) The parties to the criminal actions have in the civil proceedings asserted their privilege against self-incrimination and have refused to provide discovery to the State. This is their right. It is not their right to bar the State from proceeding to obtain civil relief for securities fraud either in the form of damages or an injunction. Nor may their unindicted associates refuse to give discovery or otherwise restrain the civil litigation against them while the criminally accused dealers continue to invoke the right to remain silent; like the indicted defendants, however, they may exercise their privilege against self-incrimination, but may not indefinitely stay the civil proceedings. Hence, we reverse the judgment below, which had the effect of staying the civil securities fraud actions until the conclusion of the criminal proceedings.

## I

The reported decisions below, 221 *N.J.Super.* 169 (App.Div. 1987), and 213 *N.J.Super.* 161 (App.Div.1986), set forth the background for this appeal. This civil matter began on July 2, 1985, when the State of New Jersey filed a complaint for securities fraud seeking relief pursuant to *N.J.S.A.* 49:3–47 to –76 against various defendants, including Kobrin Securities, Inc., as well as nine individuals. A State grand jury was also

investigating these activities for possible criminal violations and on April 16, 1987, returned a criminal indictment against Kobrin Securities, Inc., as well as against two of the individual defendants in the civil action: Barrett R. Kobrin and Armand DeAngelis.

The civil complaint sought the appointment of a receiver, preliminary and permanent restraints, recission of the sale of certain securities, and award of damages for investors. (The State withdrew its demand for a receiver for Kobrin Securities after a trustee in bankruptcy was appointed to liquidate that corporation.)

On August 1, 1985, a trial court granted the State's application for preliminary restraints and enjoined the defendants Kobrin, DeAngelis, and Kobrin Securities from engaging in virtually any aspect of the securities business in New Jersey. This preliminary injunction is still in force. The State also sought and obtained restraints against the disposition of assets by certain of the individual civil defendants.

Prior to any indictment, plaintiffs and defendants had undertaken discovery in the civil action. Counsel for certain defendants deposed Richard Barry, investigator for the State Bureau of Securities (the Bureau). As of January 1986, Barry had appeared for depositions approximately six times. Counsel for DeAngelis deposed several witnesses who had provided the affidavits and certifications filed with the State's complaint. Counsel for certain defendants reviewed the Bureau's files concerning this matter; those files were made available for inspection and copying.

However, defendants opposed the State's efforts to depose them. DeAngelis and Kobrin, having learned of State and federal criminal investigations into their affairs, declined to answer questions or to produce documents concerning the merits of the civil lawsuit. Notwithstanding this failure of discovery, the State amended its complaint to add more than

ninety certifications from investors alleging losses in excess of $750,000.

On April 16, 1987, a State grand jury returned an indictment charging defendants DeAngelis, Kobrin, and Kobrin Securities, Inc. with securities fraud, misapplication of entrusted property, and engaging in practices that constituted the unlawful offer, sale, or purchase of securities.

Citing the return of the indictments against Kobrin and DeAngelis, the trial court, on its own motion, stayed the State's civil action with regard to the two individual defendants and placed the case on the "inactive list" on May 1, 1987. The court had previously informed the Attorney General by letter dated January 28, 1987, that "I really consider this case as paralyzed by the Fifth Amendment issue and by the failure of the Attorney General's office either to indict or declare that they are not going to indict the parties involved." The court had stated in this letter that it contemplated placing the case on the inactive list.

The State moved for reconsideration. At the same time several of the other civil defendants moved to stay the pending civil actions against them. On the combined return date, the court noted: "It's really all one package. All right. It's all one." In essence, the court declined to reactivate the civil cases but found that the State was free to proceed with civil actions against individual defendants if it chose to. On appeal, the Appellate Division affirmed the trial court's ruling.

We granted leave to appeal, 110 *N.J.* 161 (1988), to consider whether such a civil case is "paralyzed by the Fifth Amendment issue."

## II

The conflict of interest resulting from the interrelationship of criminal and civil actions against the same defendant is a familiar one. In *DeVita v. Sills*, 422 *F.*2d 1172 (3d Cir.1970), Judge Gibbons explored the tensions inherent in such proceed-

ings and noted that whatever the difficulties of invoking the fifth-amendment privilege, there is no constitutional inhibition that a defendant in a criminal case not "be put to the difficult choice of having to assert the privilege in a related civil case * * *." *Id.* at 1178 (citing *United States v. Kordel,* 397 *U.S.* 1, 90 *S.Ct.* 763, 25 *L.Ed.*2d 1 (1970)).

Thus, in *United States v. Simon,* 373 *F.*2d 649 (2d Cir.), *cert. granted sub nom. Simon v. Wharton,* 386 *U.S.* 1030, 87 *S.Ct.* 1485, 18 *L.Ed.*2d 591, *vacated as moot,* 389 *U.S.* 425, 88 *S.Ct.* 577, 19 *L.Ed.*2d 653 (1967), accountants who had been indicted for stock sale violations objected to depositions being taken by the trustee in bankruptcy of the company to which the charges in the indictment referred. The accountants sought to stay their depositions, contending that they should not be required to plead the privilege against self-incrimination in the civil case. The court held that these defendants could, if they wished, assert the privilege in the securities proceedings, but that they had no constitutional right to be relieved of the burden of that choice.

That the exercise of the privilege may pose difficult choices for litigants poses no obstacle, then, to the continuation of the civil litigation. "Rather, the alleviation of tension between constitutional rights has been treated as within the province of a court's discretion in seeking to assure the sound administration of justice." *People v. Coleman,* 13 *Cal.*3d 867, 885, 533 *P.*2d 1024, 1039, 120 *Cal.Rptr.* 384, 399 (1975). The *Coleman* court noted that while

[s]ome courts have been sympathetic to [defendants in] such a situation and have stayed the civil proceedings until disposition of the related criminal prosecution * * * *([s]ee, e.g., National Discount Corp. v. Holzbaugh,* (E.D. Mich.1952), 13 *F.R.D.* 236, 237[,] * * * [o]ther courts have refused to go beyond allowing civil defendants to refuse to answer particular questions propounded in the course of discovery by expressly invoking their privilege against self-incrimination. *(See, e.g., In re Penn Central Securities Litigation,* (E.D.Pa. 1972), 347 *F.Supp.* 1347, 1348.)

[*Coleman, supra,* 13 *Cal.*3d at 885, 533 *P.*2d at 1039, 120 *Cal.Rptr.* at 399 (citation omitted).])

The most frequently cited expression of the principle is:

There may be cases where the requirement that a criminal defendant participate in a civil action, at peril of being denied some portion of his worldly goods, violates concepts of elementary fairness in view of the defendant's position in an inter-related criminal prosecution. On the other hand, the fact that a man is indicted cannot give him a blank check to block all civil litigation on the same or related underlying subject matter. Justice is meted out in both civil and criminal litigation. The overall interest of the courts that justice be done may very well require that the compensation and remedy due a civil plaintiff should not be delayed (and possibly denied). The court, in its sound discretion, must assess and balance the nature and substantiality of the injustices claimed on either side.

[*Gordon v. Federal Deposit Ins. Corp.*, 427 *F.*2d 578, 580 (D.C.App.1970), quoted in *Barbee v. Pigott*, 398 *So.*2d 137, 138 (La.Ct.App.1981) (refusing to stay civil suit for personal injuries), and *People v. Coleman, supra*, 13 *Cal.*3d at 885, 533 *P.*2d at 1039, 120 *Cal.Rptr.* at 399 (testimony of probationer at probation revocation hearing inadmissible at defendant's subsequent criminal trial except for impeachment or rebuttal.)]

 Generally, the question should be whether refusing to stay discovery would impose undue hardship on a defendant and would thereby expose to unnecessary adverse consequences the defendant exercising the constitutional privilege. One consideration that will guide a court is whether the civil proceeding seeks only a monetary recovery by government against a defendant. The typical example of such a case is the recovery of unpaid taxes. *Securities & Exch. Comm'n v. Dresser Indus., Inc.*, 628 *F.*2d 1368, 1376 (D.C.Cir.), *cert. denied*, 449 *U.S.* 993, 101 *S.Ct.* 529, 66 *L.Ed.*2d 289 (1980). Another consideration would be whether the two actions are nearly identical in scope. (Here the civil action is much broader than the criminal.) But when relief is sought to prevent continued injury to the public, such as that caused by the continued dissemination of unapproved drugs, *United States v. Kordel, supra*, 397 *U.S.* at 11, 90 *S.Ct.* at 770, 25 *L.Ed.*2d at 10, the civil proceedings should not be stayed except in the most unusual circumstances. Particular civil proceedings have been stayed only when to continue them would expose a litigant to undue risk of losing the civil case or facing criminal prosecution. *Arden Way Assocs. v. Boesky*, 660 *F.Supp.* 1494, 1499 (S.D.N.Y.1987) (citing *Wehling v. Columbia Broadcasting Sys.*, 608 *F.*2d 1084, 1088–89 (5th Cir.1978)); *see also Tedeschi*

*v. Grover* (Ohio App.1988), 1988 Westlaw 10104 (defendant in related civil and criminal matters not entitled to postpone civil discovery while the possibility of criminal prosecution exists).

Our precedent has been to the same effect. *Woodward–Clyde Consultants v. Chemical and Pollution Sciences, Inc.,* 105 *N.J.* 464, 464, 475 (1987) (citing *National Freight, Inc. v. Ostroff,* 133 *N.J.Super.* 554, 559 (Law Div.1979) (defendant's claim of privilege because of pending criminal action does not warrant a stay of discovery in a civil action)); *Whippany Paper Bd. Co. v. Alfano,* 176 *N.J.Super.* 363, 375–76 (App.Div.1980) (when to avoid discovery defendant relies on privilege against self-incrimination, court may strike pleading and enter default judgment).

### III

Application of these principles to the facts of this case leads us to conclude that the trial court erred when it placed the civil cases on the inactive list. We appreciate that a sound measure of discretion must be reposed in the trial courts to effectuate a proper balance, but we do not sense that the range of factors considered by the trial court included the injustice to the public and private civil litigants in this case. Requiring the State to proceed *seriatim* against available civil defendants on an individual basis is not warranted. Many of the unindicted defendants may continue to sell securities and continue to be free from obligation to those ninety or so investors who together allege a loss of hundreds of thousands of dollars in this stock venture. If the defendants are unqualified to serve in that profession, as the State alleges, the licensure proceedings against them cannot be stayed. *De Vita v. Sills, supra,* 422 *F.*2d at 1178. The alleviation of tension between constitutional and civil rights here seemed to have been resolved entirely in favor of the defendants without any consideration of the rights of the civil claimants. "Justice [must be] meted out in both civil and criminal litigation. The overall interest of the courts

that justice be done may very well require that the compensation and remedy due a civil plaintiff should not be delayed (and possibly denied)." *Gordon v. Federal Deposit Ins. Corp., supra,* 427 *F.*2d at 580.

Hence, we conclude that this case should be restored to the active list. The State has no burden to demonstrate its right to proceed with civil discovery. The defendants must demonstrate how the discovery burdens imposed upon them outweigh the public interest. The trial court shall thereafter exercise its discretion to mete out justice in both the civil and criminal litigations. It has full authority to manage the course of discovery. The criminally-accused defendants are in the most sensitive position and the order of discovery from them may be scheduled to follow discovery from the other civil defendants, who must themselves choose whether to exercise the privilege in these proceedings or to incur the consequent civil burdens. It may be that in the orderly progress of discovery the criminal litigation will have been concluded in advance of any scheduled civil trial date, in which event any defendants then choosing to testify or reopen discovery might be free to do so or to produce evidence from the other co-defendants. If this order of disposition does not occur, we fail to see why the investors and the public should continue to be prejudiced indefinitely by the defendants' requests for delay. *See Boesky, supra,* 660 *F.Supp.* at 1498 (fifth-amendment claim insufficient to sever and stay cases against defendant) (citing *Securities & Exch. Comm'n v. Dresser Indus., Inc., supra,* 628 *F.*2d at 1376 (similarly denying stay), and *Paine, Webber, Jackson & Curtis, Inc. v. Andrus, Inc.,* 486 *F.Supp.* 1118, 1119 (S.D.N.Y.1980) (denying stay)); *see also Securities & Exch. Comm'n v. First Fin. Group, Inc.,* 659 *F.*2d 660, 667 (5th Cir.1981) (stay of civil proceedings denied to defendant since "[p]rotection of the efficient operation of the securities markets and the financial holdings of investors from fraudulent marketing practices may

require prompt civil enforcement, which can not await the outcome of a criminal investigation.") (citing *Securities & Exch. Comm'n v. Dresser Indus., Inc., supra,* 628 *F.*2d at 1375). In a recent action under *N.J.S.A.* 49:3–47, the Bureau recovered $3.1 million for defrauded investors. *Edwards v. Premium Resources, Inc.,* C–3137–86 (Ch.Div. June 20, 1988).

Of course, we must be sensitive to the potential for the State's deliberately manipulating a civil procedure in order to obtain evidence against a criminal defendant. Should the government "use * * * the civil discovery process to compel answers to interrogatories * * * to build the government's case in a parallel criminal proceeding[, it would reflect] 'such unfairness and want of consideration for justice' as to require reversal." *Securities & Exch. Comm'n v. Dresser Indus., Inc. supra,* 628 *F.*2d at 1375 (quoting *United States v. Kordel, supra,* 397 *U.S.* at 11, 90 *S.Ct.* at 770, 25 *L.Ed.*2d at 10). The trial court shall have discretion to deal with such an occurrence. We have recently reemphasized our commitment to fundamental fairness in the prosecution of criminal matters. *See State v. Strong,* 110 *N.J.* 583 (1988) (testimony compelled under grant of immunity may not lead to penal detriment of its maker). We have no sense that such is the object of the State in these proceedings. The Bureau of Securities is entirely separate from the Division of Criminal Justice, and, if anything, its lack of cooperation in this case has been more of a problem to the State than to the defendants.

The judgment of the Appellate Division is reversed and the cause remanded to the trial court for further proceedings.

*For reversal and remandment*— Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For affirmance*— None.