**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5881-17T4

GURBIR S. GREWAL, Attorney
General of the State of New Jersey,
and PAUL R. RODRÍGUEZ, Acting
Director of the New Jersey Division
of Consumer Affairs,

     Plaintiffs-Appellants,

v.

ATLANTIC COAST HOUSE LIFTING
LIMITED LIABILITY COMPANY, a/k/a
ATANTIC COAST HOUSE LIFTING,
LLC, a/k/a ATLANTIC COAST HOUSE
LIFTING, a/k/a ATLANTIC COAST HOUSE
LIFTERS, GEORGE REX CONSTRUCTION,
LLC, a/k/a GEORGE REX CONTRACTING,
LLC, a/k/a GEORGE REX CONTRACTING,
a/k/a GFR CONTRACTING, LLC, and GEORGE
REX, individually and as owner, officer, director,
founder, member, manager, representative and/or
agent of ATLANTIC COAST HOUSE LIFTING
LIMITED LIABILITY, and GEORGE REX
CONSTRUCTION, LLC,

     Defendants-Respondents.

_____

Argued March 11, 2019 – Decided July 18, 2019

Before Judges Sabatino, Sumners and Mitterhoff.

On appeal from an interlocutory order of the Superior Court of New Jersey, Chancery Division, Atlantic County, Docket No. C-000003-17.

Jeffrey Alan Koziar, Deputy Attorney General, argued the cause for appellants (Gurbir S. Grewal, Attorney General, attorney; Jason Wade Rockwell, Assistant Attorney General, of counsel; Lorraine K. Rak, Deputy Attorney General, and Mark E. Critchley, Deputy Attorney General, on the briefs).

Katrine L. Hyde argued the cause for respondents (Kennedys CMK LLP, attorneys; David M. Kupfer, Katrine L. Hyde and Elizabeth H. Rohan, of counsel and on the brief).

PER CURIAM

In this matter, we are asked to address one of the unfortunate situations allegedly caused by unscrupulous contractors following the tremendous property devastation caused by Superstorm Sandy. By leave granted, plaintiffs Gurbir S. Grewal, New Jersey Attorney General (the AG), and Paul R. Rodríguez, Acting Director of the New Jersey Division of Consumer Affairs (the Division) (collectively, the State), appeal from a June 29, 2018 Chancery court order that stayed their Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 and -

2, lawsuit against defendants George Rex and Atlantic Coast House Lifting[1] pending disposition of potential criminal charges against Rex; and issued an order to show cause (OTSC) on October 17, 2018, requiring aggrieved homeowners to show cause as to why they should not be barred from filing any criminal or municipal complaints[2] against defendants. For the reasons expressed below, we reverse.

## I.

Following Superstorm Sandy in November 2012, the Division created the Reconstruction, Rehabilitation, Elevation and Migration (RREM) Program to provide homeowners with up to $150,000 in grant money to repair damage to their homes. Under the program, homeowners were permitted to select an approved private contractor of their choice. Many homeowners hired defendants to repair their homes. Over the course of four years, the Division received nine complaints from homeowners that defendants' repairs were carelessly

---

[1]  Defendants include Rex, and all business entities that he owns as sole shareholder. For sake of convenience, they will be referred to collectively as defendants.

[2]  For the sake of simplicity, all references hereafter to "criminal charges" or "criminal complaints" shall include both indictable and municipal court charges.

A-5881-17T4

completed, incomplete, or non-compliant with state and municipal building codes. Consequently, the State filed a lawsuit against defendants in February 2018, alleging violations of the CFA and other state laws,[3] seeking to permanently enjoin defendants' business operations and monetary damages.

Simultaneously, three of the nine homeowners who filed complaints with the Division, also filed municipal court complaints against Rex.[4] Their complaints were later dismissed. In addition, a total of six complaining homeowners have been financially compensated by RREM for the money they lost to defendants. Thus, it would seem that their interest in filing criminal complaints is lacking.

Concerned about the prospects of future criminal complaints in municipal court and the Superior Court, Rex invoked his Fifth Amendment right against self-incrimination, and refused the State's requests to depose him as part of the CFA action. Defendants also moved for a stay of the civil action pending tolling

---

[3] The Contractors' Registration Act, N.J.S.A. 56:8-136, -152, and regulations governing: contractor registration, N.J.A.C. 13:45A-17.1, -17.4, and home improvement practices, N.J.A.C. 13:45A-16.1, -16.2.

[4] The third-degree theft complaints were transferred to the Superior Court, but administratively dismissed. The disorderly persons theft offense complaint was dismissed by the municipal court for lack of prosecution.

A-5881-17T4

of the five-year statute of limitations period for criminal complaints the nine homeowners could potentially file under N.J.S.A. 2C:1-6.

Following argument, the court reserved decision. About three weeks later, relying upon State v. Kobrin Sec., Inc., 111 N.J. 307 (1988), the court granted defendant's motion to stay the civil proceedings. In his oral decision, the court stated,

> There is no[] significant harm to the [nine homeowners] in granting [the motion to stay] as six of the nine . . . have been reimbursed.
>
> . . . .
>
> It is clear that the issues involve the same or similar type of conduct. It is clear that with the specter of criminal prosecution hanging over [Rex's] head that he is forced to make a decision an[d] it is clear . . . that he would be prejudiced if he had to proceed to a deposition and answer questions under oath and proceed to trial . . . recognizing that anything he said [could] be used against him in a pending criminal proceeding.
>
> . . . .
>
> . . . [T]he filing of this litigation, [and] the media attention that may have attached has, to some extent, helped the public policy if these are proven and his business has been significantly diminished.

In addition, to further support its decision to grant the stay and in an effort to bring some finality to the possibility of the nine homeowners filing criminal

A-5881-17T4

charges against defendants, the court ordered defendants to serve an OTSC on the homeowners to show cause as to why they have not brought criminal charges against defendants, and whether they intend to bring any such claims in the future. Defendants followed the court's directive.

Within a month, the court issued the OTSC, which provided that the nine homeowners would be barred from asserting a claim in "any police report and/or [criminal] complaint to any law enforcement agency" against defendants arising from the work performed at their homes if they failed to come forward with a claim on or before October 17, 2018. The judge commented that if other homeowners were to bring criminal complaints against defendants at a later time, "they have a right to [file complaints] and I'm gonna continue the stay and then we'll have to talk about it, but we could have, you could argue it again, but my gut reaction is under these circumstances I would continue the stay until completion . . . ."

The OTSC has been stayed pending this appeal.

## II.

Before us, the State raises two arguments. First, it contends the Chancery court abused its discretion when he granted defendants' motion to stay the civil

proceedings. Second, it contends the court erred as a matter of law in granting the OTSC. We address these arguments in the order presented.

A.

The decision to stay a civil action due to the pendency of a criminal action is not constitutionally required but rather rests in the sound discretion of the trial court. Kobrin, 111 N.J. at 314. It is not a violation of the Fifth Amendment or Due Process to require a defendant to make the choice to testify, even though giving testimony at a civil proceeding may help criminal prosecutors, as opposed to invoking his Fifth Amendment rights and suffering any adverse civil consequences that flow therefrom. Id. at 312-13. "[W]hatever the difficulties of invoking the fifth-amendment privilege, there is no constitutional inhibition that a defendant in a criminal case not 'be put to the difficult choice of having to assert the privilege in a related civil case . . . .'" Id. at 313 (quoting De Vita v. Sills, 422 F.2d 1172, 1178 (3d Cir. 1970)). In other words, as long as a defendant has the right to invoke his Fifth Amendment privilege in the civil proceeding, there is no constitutional right to be relieved of the burden of that choice. United States v. Simon, 373 F.2d 649 (2d Cir.), cert. granted sub nom. Simon v. Wharton, 366 U.S. 1030, vacated as moot, 389 U.S. 425 (1967).

A-5881-17T4

Of course, "[t]here may be cases where the requirement that a criminal defendant participate in a civil action . . . [may] violate[] concepts of elementary fairness in view of the defendant's position in an inter-related criminal prosecution." Kobrin, 111 N.J. at 314 (citation and internal quotations omitted). "On the other hand, the fact that a [person] is indicted cannot give [the person] a blank check to block all civil litigation on the same or related underlying subject matter." Ibid.

Rather, in the exercise of its discretionary judgment, a trial court "must weigh competing interests and maintain an even balance." Landis v. N. Am. Co., 299 U.S. 248, 254-55 (1936); see also Procopio v. Gov't Emps. Ins. Co., 433 N.J. Super. 377, 380 (App. Div. 2013). "The court, in its sound discretion, must assess and balance the nature and substantiality of the injustices claimed on either side[,]" with the understanding that "[j]ustice is meted out in both civil and criminal litigation." Kobrin, 111 N.J. at 314 (quoting Gordon v. Fed. Deposit Ins. Corp., 427 F.2d 578, 580 (D.C. Cir. 1970)). Where the risk of exposing a defendant exercising the constitutional privilege to adverse consequences is slight, then "[t]he overall interest of the courts that justice be done may very well require that the compensation and remedy due a civil plaintiff should not be delayed (and possibly denied)." Ibid.

A-5881-17T4

Accordingly, several considerations guide a trial court in resolving the question of a stay. The court must determine "whether refusing to stay discovery would impose undue hardship on a defendant and would thereby expose to unnecessary adverse consequences the defendant exercising his constitutional privilege." Kobrin, 111 N.J. at 314. The status of the criminal case, including whether the defendant has been indicted, must be examined. Nat'l Freight, Inc. v. Ostroff, 133 N.J. Super. 554, 558-59 (Law Div. 1975).

In National Freight, over one hundred criminal complaints were filed against the defendant and forwarded to the grand jury, but no indictments were presented as of the date of the court's decision. Id. at 555. The court reasoned that a stay was against the interests of justice because a criminal trial may never occur at all, noting that "[i]ndictments have not yet been found . . . nor is there any certainty that any will be." Id. at 558. In denying the defendant's application to stay the civil action that was based on the same facts giving rise to the criminal complaints against him – which were placed on the inactive list – the court concluded:

> to say that the civil suit must remain in statu[s] quo indefinitely is to import to the courts an impotency unworthy of them. To compel other parties to sit supinely by while their rights or possibility of recovery are eroded is to invite contempt for the law as well as

9

permit any guilty party to secrete or dissipate the fruits of his wrongdoing.

[Id. at 559.]

The State contends that proceeding with the CFA action would not impose any undue hardship because there are no known ongoing criminal investigations or indictments, and defendant failed to cite any case law that supports the proposition that a stay in a civil proceeding is appropriate. To the contrary, Rex asserts there is a "real danger" that the information gained during the civil proceedings could potentially be used to "fully prosecute the next criminal case against [him]."

From our perspective, the State's position is prevailing. Rex is in the same boat as the defendant in National Freight, no indictment has been returned against him and no criminal charges are apparently pending against him. The superior and municipal court complaints against Rex have been dismissed, and defense counsel essentially admitted there were no known ongoing investigations, rendering defendants' concerns to be speculative. There is no indication that the State has a "hidden agenda" to obtain incriminating statements from Rex through the Division's efforts to enforce the CFA. See State v. P.Z., 152 N.J. 86, 120 (1997); Kobrin, 111 N.J. at 317. Thus, we discern no undue hardship or adverse consequences on defendants in staying this matter.

10

The court must also consider "whether the civil proceeding seeks only a monetary recovery by government against a defendant." Kobrin, 111 N.J. at 314. Related to that is the need to consider whether the relief sought is to protect the public interest. Id. at 314-315. The State argues that it seeks injunctive relief to permanently cease defendants' business operations and to revoke their licenses. It also seeks monetary relief from defendants not only for the homeowners who were allegedly affected by defendants' allegedly fraudulent practices, but also to replenish the funds paid to homeowners through the RREM program, which is funded by state taxpayers. Defendants claim that the negative media coverage has significantly damaged Rex's business[5] and there will be no harm to the public as the homeowners have already received additional funds to complete construction after filing their complaints with the Division. They further posit that the media attention has "dealt a blow" to their business; thus there is no need to cease additional harm to the public.

Again, we agree with the State's position. In exercising its statutory responsibility under the CFA, the State is seeking to protect the public from

[5] At the time of the June 8, 2018 hearing, defense counsel stated that he did not have the exact figures, but that Rex informed a different court and the State during mediation that "his receipts[] are a fraction of what they were before the [CFA] litigation was filed and . . . the local media attention." No documentation was provided to the trial court or is in the appellate record.

defendants due to their alleged violations by enjoining their contracting businesses from operating, and recouping taxpayer monies paid to homeowners under the RREM program.  This clearly weighs in favor of allowing this matter to proceed to conclusion without waiting for the indefinite period of a stay and resulting in the possibility of delaying civil justice to the citizens of New Jersey.

We conclude the reasoning that the public interest concerns were satisfied by the impact of media coverage on defendants' businesses, as suggested by the court, is flawed.  The State's position is that defendants' violations of state law were so egregious that they should no longer be allowed to operate.  This salutary goal cannot be accomplished by the "black eye" they may have received from negative media attention.  There is a reasonable prospect that uninformed homeowners or property owners may be unaware of the reports of defendants' alleged misdeeds.  In the event that the court found they violated the CFA, the court may avoid future harm by prohibiting defendant from conducting business in the future.

Another consideration is "whether the two actions are nearly identical in scope."  Kobrin, 111 N.J. at 314.  The court was correct in finding that this civil matter and any potential criminal charges would involve the same issues arising from the same transaction or occurrence.  There is mutual identity between the

12

parties in the civil and criminal actions because the nine homeowners who brought the municipal court complaints are the same individuals for whom the State is initiating this consumer protection action. Defendants are also the same parties, as Rex is the sole shareholder and owner of the various defendant business entities.

Nevertheless, "when relief is sought to prevent continued injury to the public, such as that caused by the continued dissemination of unapproved drugs, United States v. Kordel, 397 U.S. 1, 11 (1970), the civil proceedings should not be stayed except in the most unusual circumstances." Kobrin, 111 N.J. at 314. Only when particular civil matters "would expose a litigant to undue risk of losing the civil case or facing criminal prosecution[,]" should they be stayed. Id. (citing Arden Way Assocs. v. Boesky, 660 F.Supp. 1494, 1499 (S.D.N.Y. 1987)). Since, as noted above, we do not conclude there is any indication that Rex is exposed to criminal prosecution, the common identity should not have been a basis for staying this action.

Based upon all these reasons, we conclude that the Chancery court mistakenly applied its discretion in ordering a stay.

A-5881-17T4

B.

The State next contends that the Chancery court's imposition of an OTSC requiring the nine homeowners to show cause – why they did not file or pursue criminal complaints against defendants, and if they did not do so, they would be "forever barred" from filing future complaints if not raised by a set date – was "impermissible under the law and unduly benefits defendants at the expense of the [homeowners]," and punishes the homeowners "because the State filed suit." We agree.

Our standard of review is whether, in granting or denying the order to show cause, the trial court erred as a matter of law. Waste Mgmt. of New Jersey, Inc., 399 N.J. Super. at 516-18; Solondz, 317 N.J. Super. 16, 20-21 (App. Div. 1998). An OTSC is appropriate where a party is seeking any "form of emergent, temporary, interlocutory, or other form of interim relief," such as to stay a civil proceeding. Solondz v. Kornmehl, 317 N.J. Super. 16, 20 (1998) (citing R. 4:52-1 and -2); see Chalom v. Benesh, 234 N.J. Super. 248, 254 (Super. Ct. 1989).

Usually, parties request an OTSC where (1) they seek "entry of an order requiring a party to show cause why a temporary restraint or an interlocutory injunction should not issue," and (2) at the commencement of an action "requir[ing] a defendant to show cause why final judgment should not be

entered[,]" often referred to as a "summary action." Waste Mgmt. of New Jersey, Inc. v. Union Cty. Utilities Auth., 399 N.J. Super. 508, 516 (App. Div. 2008). An OTSC, however, may never be instituted for the entry of a permanent injunction. Ibid.; see also Solondz, 317 N.J. Super. at 20-21; Chalom, 234 N.J. Super. at 254 (criticizing an OTSC that provided for ex parte "instant, complete and final relief.").

In assessing the court's decision to stay this civil matter, we appreciate that it wanted to expedite the filing of criminal complaints against defendants to minimize the length of the stay. Defendants assert the court "fashioned a mechanism by which the homeowners at issue were afforded a complete opportunity to be heard had they wished to challenge any aspect of the requirement that they cause a criminal action to commence by October 17, 2018." However, even though our courts have the ability to establish parameters to determine whether a claim has been filed within the statute of limitations, the OTSC impermissibly shortens the requisite five-year statute of limitations under N.J.S.A. 2C:1-6 for filing criminal claims. As the State argues, the court "[t]hrough its own deliberative process and consideration of public policy[]" disregarded the time frame mandated by the Legislature; without any supporting case law that would allow such an order. Moreover, while the OTSC does not

specifically mention a complete bar, it was essentially a permanent injunction against the homeowners filing criminal complaints against defendants if they did not assert any criminal or quasi-criminal complaints; as it directs that any such complaints "must be filed" by the specified date.

We further find favor with the State's argument that the OTSC was overbroad. It barred homeowners from asserting a claim in "any police report and/or [criminal] complaint to any law enforcement agency," and any claims against defendants arising from the work performed at their homes, despite the fact that such claims may not be ripe prior to the court's mandated cut-off date. While the homeowners were compensated under the RREM program, this does not extinguish their right to file criminal complaints against defendants and pursue punitive measures under the law.[6] Consequently, the OTSC would clearly benefit defendants to the prejudice of the homeowners. We discern no viable purpose for giving this advantage to defendants over the individuals they allegedly took advantage of who were already dealing with the trauma and life changing experience they suffered by their hurricane-ravaged homes.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[6] If Rex were charged with third-degree theft by deception, N.J.S.A. 2C:20-4(a), he could be charged with up to 364 days in county jail, placed on probation, and be subject to fines.

A-5881-17T4