**ALLSTATE INSURANCE CO., Plaintiff,**

v.

**Robert LONGWELL, Defendant.**

No. 87 Civ. 7818(KC).

United States District Court, S.D. New York.

March 7, 1990.

---

Robert J. Brennan, Porzio, Bromberg & Newman, New York City, for plaintiff.

Frank M. Blancato, Peekskill, N.Y., for defendant.

## MEMORANDUM AND ORDER

CONBOY, District Judge:

This action arises out of a dispute between an insurer and an insured as to whether the insured, who invoked his Fifth Amendment right against self-incrimination rather than answer questions relating to a claimed loss, complied with his duty of cooperation under the insurance policy, which obligation the insurer maintains is a condition precedent to recovery thereunder.

1. Defendant has made a lame attempt to raise an issue of fact regarding this statement, which

## STATEMENT OF FACTS

Allstate Insurance Company ("Allstate") issued a homeowner's insurance policy, number 003 206 244 (the "policy"), to the defendant, Robert Longwell ("Longwell") beginning January 21, 1987, for a one year term. On March 3, 1987, a fire destroyed Longwell's home located at 7 Depew Court, Peekskill, Westchester County, New York.

At the time of the fire, the premises were insured by Allstate, with a coverage of $180,000 for the building and $90,000 for the contents. On April 13, 1987, Longwell executed a sworn statement claiming a $42,193.02 loss under the policy with respect to personal property (contents). *See* Exhibit A, Affidavit of Robert J. Brennan, sworn to March 4, 1988, in Support of Motion for Summary Judgment ("Brennan 3/4/88 Aff.").[1] Allstate had good reason to believe that Longwell falsified this sworn statement in order to increase the amount of his claim. *See* Affidavit of Michael Lane, sworn to February 24, 1988 ("Lane Aff."), at ¶¶ 5–10 (insurance investigator relating facts of bribe by Longwell in exchange for fraudulently inflating claim).

On August 7, 1987, Longwell submitted to an Examination Under Oath ("EUO") pursuant to a clause in the insurance policy. During the EUO, Longwell refused to answer certain questions concerning some items in the personal property claim inventory and proof of loss. He based his refusal on Fifth Amendment grounds due to the criminal matter pending against him at the time stemming from the submission of the allegedly inflated loss claim. *See infra* at 1193.

On November 2, 1987, Allstate, in a letter to Longwell, denied Longwell's claims. On the same date, Allstate filed a complaint in this Court, Civil Action No. 87 Civ. 7818, seeking declaratory relief that the insurance policy was void on the basis of fraud by the insured and a breach of certain policy provisions by the insured. On March 2, 1988, Longwell commenced an action in New York State Supreme Court,

attempt we reject *infra* at 1193 footnote 2.

Westchester County, seeking to recover on the policy in the amount of $125,000, the alleged amount of property damage. Allstate, then, on March 7, 1988, moved for summary judgment in the federal action, seeking an order declaring that they have no obligation to pay any policy proceeds to Longwell. On March 18, Longwell cross-moved to dismiss the federal action in deference to the similar, though later filed, action pending in state court.

Prior to Longwell's cross-motion to dismiss, Allstate had, on March 14, removed the state court action to this federal court, and claims to have given the requisite notice to this effect to Longwell. The removed action was given the civil action number of 88 Civ. 1746. On April 11, 1988, in response to the removal, Longwell, in the first-filed federal action (87 Civ. 7818), made a motion to remand the second action (88 Civ. 1756) to the state court. On April 27, 1988, Allstate sought an order awarding attorney's fees under Fed.R.Civ.P. 11 solely with respect to Longwell's motion to remand.

In June of 1989, while the above-described motions were *sub judice* before the judge to whom they were assigned, both actions were transferred to us. We held a pre-trial conference in the cases and allowed the parties to submit any new developments in the law during the pendency of the motions. The last of these letters was received in September 1989. We also held a telephone conference in an attempt to track down papers that had not been filed with the Clerk.

### DISCUSSION

#### A. *Defendant's Motion to Remand and Cross–Motion to Dismiss*

■ As indicated above, Longwell moves in the first action to have the second action remanded to the New York State Supreme Court, Westchester County, pursuant to 28 U.S.C. § 1447(c). Section 1447(c) provides in relevant part that:

A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

As is obvious by its unambiguous language, this section is directed toward "defects in the removal procedure." 1A J. Moore, B. Ringle, and J. Wicker, *Moore's Federal Practice* ¶ 0.157[1.–4] at 45. These defects may involve the improper removal of an action which does not fit one of the categories described in 28 U.S.C. § 1441 or one of the other removal sections, and hence the lack of federal jurisdiction, or, the defects may relate to the statutory procedure for the removal itself under sections 1446 and 1447.

■ As Longwell concedes, the second action is one over which the federal court has original jurisdiction pursuant to 28 U.S.C. § 1332: Allstate is a foreign corporation organized under the laws of Illinois, while Longwell is a citizen of the State of New York, and the amount in controversy is $125,000, clearly in excess of the $10,000 minimum requirement then in effect. Furthermore, all of the statutory procedural requirements of 28 U.S.C. § 1446(a), (b), (d) and (e) and Civil Rule 25 of the Southern and Eastern District Courts have been met. Accordingly, Longwell has failed to establish any defect in the removal. Longwell does not, however, challenge the removal on procedural grounds. Rather, he claims the court should remand on abstention grounds. Recognizing that "classic removal makes little room for abstention," one respected commentator states that "[a]lthough under § 1447(c) remand is proper only where a case has been 'improperly removed and without jurisdiction' (which does not include abstention), we believe that after removal has been effected a federal court, while retaining jurisdiction of a case, may invoke principles of abstention in any situation where they would be applicable in a case within the court's original jurisdiction." *Moore's, supra,* ¶ 0.157[1.–4] at 45–46 (parentheses in original).

In his supplemental letter to the Court, Longwell cites two cases to support his abstention argument, which were not re-

ferred to in his original memorandum of law in support of the remand: *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) and *Corcoran v. Ardra Ins. Co., Ltd.*, 842 F.2d 31 (2d Cir.1988). Longwell's reliance on these cases is, however, misplaced. In fact, *Cohill* does not involve abstention, but rather discretionary remand of pendent state claims. *Cohill* involved a case which was originally brought in state court alleging state and federal causes of actions. 484 U.S. at 345, 108 S.Ct. at 616. The defendants removed the entire case to the federal court on the basis of the federal claim. *Id.* at 346, 108 S.Ct. at 616. After the removal, the plaintiffs sought to amend their complaint to delete the sole federal claim, which motion was granted by the district court. *Id.* With no federal jurisdictional ground remaining, the plaintiffs then sought a remand of the pendent state claims to the state court, which the district court granted. *Id.* The Supreme Court affirmed, stating that despite the lack of explicit statutory authority, a district court could, in its discretion, remand a removed case to state court when all federal law claims have been eliminated from the action and only pendent state law claims remain. *Id.* at 348, 354–57, 108 S.Ct. at 618, 620–22. The Court specifically differentiated a removed case where there was no longer federal jurisdiction from a removed case where there was diversity jurisdiction. *Id.* at 356, 108 S.Ct. at 621 (discussing *Thermtron Products Inc. v. Hermansdorfer*, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976)). The Court stated that where there is diversity jurisdiction, which is nondiscretionary, the court may not eliminate the case from its docket, whether by a remand or a dismissal. *Id.; see also Law Enforcement Ins. Co., Ltd. v. Corcoran*, 807 F.2d 38, 41 (2d Cir.1986) ("And while there have been many scholarly and judicial expressions of doubt as to the desirability of its continuation, so long as Congress chooses to have us exercise diversity jurisdiction, we must do so unflaggingly."). In the instant cases, we have diversity jurisdiction and thus *Thermtron* and not *Cohill* provides the governing rule of law.

■ In *Corcoran v. Ardra Ins. Co., LTD*, 842 F.2d 31 (2d Cir.1988), the Second Circuit examined *Cohill* in conjunction with the abstention doctrine announced in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), and concluded by reasoning analogously that "if a district court has the power to dismiss an action on grounds of abstention it has the power to remand to the state court on those grounds." *Ardra*, 842 F.2d at 36. The district court had remanded the removed action to the state court relying principally on *Burford*. The circuit court found that the *Burford* abstention was appropriate because the complex regulatory "question before the court [was] a novel one," *Ardra*, 842 F.2d at 37 (litigation involved the State Superintendent's power to collect on reinsurance agreements entered into by a liquidated company). It also concluded that it was proper to remand the case in lieu of dismissing it. *Ardra*, 842 F.2d at 36.

Abstention pursuant to *Burford* is designed to avoid federal court interference with specialized ongoing state regulatory schemes. 319 U.S. at 327, 63 S.Ct. at 1104. In the case at bar, unlike *Ardra*, the question before this court is not "novel" nor does it involve, as defendant asserts, a specialized regulatory scheme. Rather, we are called upon to interpret an insurance policy in accordance with basic contract principles, with a twist of federal constitutional law. Accordingly, a *Burford* type abstention like that in *Ardra* would not be appropriate in the instant case and the motion to remand on that ground is denied.

■ Finally, Longwell contends that even though the court has jurisdiction of the removed case, a federal court "may exercise its discretion to remand where there is no federal issue and there has been no substantial commitment of judicial resources to any non-federal pendent claims." *See* Defendant's Memorandum of Law in Support of Motion to Remand at 2. We have already rejected most of this argument on the basis that there is diversity jurisdiction. The other part of this contention, the judicial economy aspect, implicates the arguments made by Longwell in its

cross-motion to dismiss the first action. These arguments were premised on the principles set forth in *Colorado River Water Conservation v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) and *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). These doctrines of abstention, however, are predicated on the existence of pending state litigation on parallel issues, and, thus, are inapposite since there is no longer anything pending in the state courts—both lawsuits are now here. Accordingly, the cross-motion to dismiss is denied.

■ Plaintiff has moved for Rule 11 sanctions against Longwell for the latter's filing of the motion to remand. We believe that although the defendant's arguments on this motion were extremely weak, they are not sanctionable.

*B. Plaintiff's Motion For Summary Judgment*

■■ Allstate has moved for summary judgment pursuant to Fed.R.Civ.P. 56. As this is a diversity action, this Court, sitting in New York, must apply New York law including New York's choice-of-law rules. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Traditionally, in cases involving interpretation of an insurance policy, New York applied *lex loci contractus* or the "place of contracting rule." However, the more modern approach is to apply the law of the jurisdiction which has the most significant contacts with the matter in dispute. *See McGinniss v. Employers Reinsurance Corp.,* 648 F.Supp. 1263, 1267 (S.D.N.Y. 1986) (applying New York's rule as set out in *Auten v. Auten,* 308 N.Y. 155, 124 N.E.2d 99 (1954)). Under either approach, we conclude that New York law governs, an assumption the parties, by their exclusive citation of New York cases, appear to have made.

The essence of Allstate's claim is that Longwell's failure to answer material questions at an examination under oath was a material breach of contract which released Allstate from all of its obligations under the contract. Allstate's other claim is that Longwell's failure to sign the EUO transcript on demand was also a material breach of contract. It is well settled that an "insurance policy is nothing more than a contract by the insurer to indemnify the insured against a ... loss which it has sustained." *Dyno–Bite, Inc. v. Travelers Co.,* 80 A.D.2d 471, 439 N.Y.S.2d 558, 560 (4th Dep't 1981). It is also well established that the contract provisions should be construed liberally in favor of the insured, Longwell. *Restina v. Aetna Casualty & Surety Co.,* 61 Misc.2d 574, 306 N.Y.S.2d 219 (Sup.Ct. Schen. Co. 1969) (citing *McNally v. Phoenix Insurance Co.,* 137 N.Y. 389, 33 N.E. 475 (1893)).

The relevant section of the Policy is found in the part entitled "Section 1 Conditions", paragraph 3(f)(2) of which states as follows:

3. **What You Must Do After A Loss**
 In the event of a loss to any property that may be covered by this policy, **you** must:

 . . . . .

 f. as often as **we** reasonably require:

 . . . . .

 2) submit to an examination under oath and sign a transcript of the same.

Exhibit D, Brennan 3/4/88 Aff. (emphasis in original). This is what is known as a "cooperation" provision or clause, the purpose of which is to codify that the insurer is entitled to obtain, promptly and while the information is still fresh, 'all knowledge, and all information as to other sources and means of knowledge, in regard to the facts, material to their rights to enable them to decide upon their obligations, and to protect against false claims. And every interrogatory that [is] relevant and pertinent in such an examination [is] material, in the sense that a true answer to it [is] of the substance of the obligation of the assured.' *Dyno–Bite,* 439 N.Y.S.2d at 560 (quoting *Claflin v. Commonwealth Ins. Co.,* 110

U.S. 81, 94–95, 3 S.Ct. 507, 514–15, 28 L.Ed. 76 (1884)). Courts have held that the failure of an insured to cooperate with the insurer is a breach of a significant condition precedent of the policy which bars the insured's recovery under the policy. *Pizzirusso v. Allstate Ins. Co.*, 143 A.D.2d 340, 532 N.Y.S.2d 309, 310 (2d Dep't 1988), *appeal dismissed*, 73 N.Y.2d 808, 537 N.Y.S.2d 478, 534 N.E.2d 316 (1988); *Averbach v. Home Ins. Co.*, 114 A.D.2d 827, 494 N.Y.S.2d 738, 739 (2d Dep't 1985); *Restina, supra*, 306 N.Y.S.2d at 222–23; *see also Dyno–Bite, supra*, 439 N.Y.S.2d at 560 (holding that the failure of the insured to cooperate is a material breach of the contract and a defense to a suit on the policy). It is clear that one of the purposes behind the cooperation clause was implicated in the instant case; that of protecting against false claims.

 It is undisputed that an EUO took place at Allstate's White Plains, New York offices on August 7, 1987.[2] We should note that at the time the EUO was demanded, the defendant was under indictment in Westchester County, New York. He was charged with insurance fraud, grand larceny and commercial bribery, all arising out of the fire in his home. In late 1987, he pleaded guilty to the count of commercial bribery only. During the course of the EUO, Longwell, invoking his Fifth Amendment privilege against self-incrimination, refused to answer questions concerning certain items included in the personal property claim inventory and proof of loss. These items included a refrigerator, a dishwasher, an electric range, ski clothing and equipment. Brennan 3/4/88 Aff., Exhibit B. It is further undisputed that when requested to do so, Longwell refused to sign the transcript of his EUO. In his opposition papers, Longwell states that because the criminal proceeding is concluded, he stands ready to answer the questions posed

to him and that he has now signed the EUO transcript. Thus, the matters that must be resolved are whether the questions Longwell refused to answer were material, such that he breached his obligations under the policy (which were a condition precedent to recovery), and, if so, whether Longwell's offer to answer the questions and to sign the EUO transcript in tardy fashion cures his breach under the contract.

 There is a line of cases in New York specifically holding that an insured may not refuse on Fifth Amendment grounds to submit to an EUO without breaching the cooperation clause in his contract. *Dyno–Bite, supra*, 439 N.Y.S.2d at 560; *Lentini Bros. Moving & Storage Co., Inc. v. New York Property Insurance Underwriting Assn.*, 76 A.D.2d 759, 428 N.Y.S.2d 684, 687 (1st Dep't 1980), *aff'd*, 53 N.Y.2d 835, 440 N.Y.S.2d 174 (1982); *Gross v. United States Fire Ins. Co.*, 71 Misc.2d 815, 337 N.Y.S.2d 221 (Sup.Ct.Kings Co. 1972); *Restina, supra*, 306 N.Y.S.2d at 222–23. From these cases also derives the principle that the failure to answer material questions at the EUO constitutes a breach of the condition precedent to recovery. *Pizzirusso, supra*, 532 N.Y.S.2d at 310; *Averbach, supra*, 494 N.Y.S.2d at 739; *Dyno–Bite, supra*, 439 N.Y.S.2d at 560; *see also Stover v. Aetna Cas. & Sur. Co.*, 658 F.Supp. 156, 159–60 (S.D.W.Va.1987) (examining identical policy language under West Virginia law; discussing, with examples of New York cases, the difference between outright refusal to submit to EUO and refusal to answer material questions during the exam).

Longwell argues that he did not, by his invocation of his Fifth Amendment rights at his EUO, breach his obligations under the policy. Faced with overwhelming case authority against his position, Longwell attacks the reasoning underlying *Restina*,

---

**2.** Although Longwell, *seemingly in an attempt* to create an issue of fact, denies knowledge or information sufficient to be able to agree or disagree with the assertion by Allstate that on April 13, 1987, he executed a sworn statement in proof of loss claiming over $42,000 in damages to his personal property as a result of the fire, the evidence submitted by Allstate shows otherwise. Bare denials, without more, will not create a genuine issue of fact. For example, Longwell never denied, not on this motion or at his EUO, that the sworn proof of loss statement annexed to the Brennan 3/4/88 Aff. as Exhibit A is a forgery. Accordingly, the fact of the submission of the sworn proof of loss is deemed uncontested.

the first case to decide that the refusal to submit to an EUO due to invocation of the Fifth Amendment privilege was a breach of the policy. Longwell argues that *Restina* relied on and explicitly adopted the reasoning of a California case, *Hickman v. London Assur. Corp.*, 184 Cal. 524, 195 P. 45 (Sup.Ct.1920) and proceeds to attempt to distinguish *Hickman* on the ground that the reasoning of *Hickman* is no longer persuasive or valid. Longwell asserts that the only reason the California Supreme Court found that the privilege could not be invoked in the case before it was because the parties had a wholly private contractual relationship. Longwell argues that in light of the recent (1984) state regulation of the insurance industry,[3] mandating the use of cooperation clauses (among many other clauses) in insurance contracts, the requisite state action exists that is necessary to find compulsion under the Fifth Amendment, which element the *Hickman* court found to be lacking.

The mere fact that the state has mandated that certain provisions appear in the policy, which are protective of both the insured and the insurer, does not mean that the policy is somehow transformed into anything other than a private contractual relationship. In fact, the statute mandating the standard policy does not establish any kind of agency relationship between the insurer and the State of New York. Indeed, the language at the beginning of the first page of the standard policy clearly creates a private contractual relationship by providing that the insurer agrees to insure the insured "in consideration of the provisions and stipulations herein or added hereto and of—dollars premium." Longwell was *not* compelled to be a party to such contract; he voluntarily entered into the contractual relationship without any coercion by Allstate or the State of New York. In addition, there have been several state courts that have decided the issue presented herein since the legislation standardizing fire insurance policies was passed. We must assume that these courts

were cognizant of this legislation, yet none has held that the case law developed prior to its effective date is dubious and no longer valid, as the defendant asserts. *See, e.g., Pizzirusso, supra,* 532 N.Y.S.2d at 310; *Averbach, supra,* 494 N.Y.S.2d at 739. Furthermore, in light of the fact that the cooperation clauses in operation and discussed in *Restina, Dyno–Bite,* and *Gross,* are exactly the same as the cooperation clause mandated by the standard fire insurance policy in issue here, we do not see how a court could so hold. Accordingly, we reject in its entirety the defendant's contention that his breach of the policy provisions is excused by his invocation of the Fifth Amendment.

■ We must next consider whether the questions Longwell refused to answer at his EUO were material. As stated in the seminal case of *Claflin v. Commonwealth Ins. Co.,* 110 U.S. 81, 94–95, 3 S.Ct. 507, 514–15, 28 L.Ed. 76 (1884) and repeated in *Dyno–Bite,* "every interrogatory that [is] relevant and pertinent in such examination [is] material, in the sense of that a true answer to it [is] of the substance of the obligation of the assured." In *Averbach, supra,* 494 N.Y.S.2d at 739, questions relating to the condition of the premises prior to the fire were held to be material. In *Pizzirusso, supra,* 532 N.Y.S.2d at 310, the insured refused to answer a line of questioning and walked out of the EUO. The court found the questions to be material and that the insured's refusal to answer constituted a material breach of the substantial condition of the policy. Likewise in an analogous case, *Fine v. Bellefonte Underwriters Ins. Co.,* 725 F.2d 179 (2d Cir.1984), concerning a false statement made at the EUO, the Second Circuit Court of Appeals reversed the district court's denial of summary judgment in favor of the insured, because its definition of materiality was far too restrictive. 725 F.2d at 183. "Thus the materiality requirement is satisfied if the false statement concerns a subject relevant and germane to the insurer's

---

**3.** Insurance Law § 3404 (McKinney's 1985 & Supp.1990) provides the standard policy provi-

sions in fire insurance contracts.

investigation as it was then proceeding." *Id.*

In the case at bar, Longwell refused to answer questions about large kitchen appliances and ski equipment which were allegedly in the house and destroyed in the fire. These questions undoubtedly concerned a subject relevant and germane to Allstate's investigation. Additionally, Allstate had reason to believe that Longwell falsified his sworn statement of proof of loss in order to inflate his claim, thus adding to the materiality of the questions propounded but unanswered. *See* Lane Aff. at ¶¶ 5–10. Accordingly, we find that these questions were material and that the refusal to answer them constitutes grounds for barring recovery under the policy.[4]

■■■ The final question for our consideration,[5] on which Longwell attempts to create a genuine issue of fact, is whether the defendant's belated offer to answer the questions and to sign the EUO transcript cures the breach of his obligations under the policy. We believe that it does not, as too much time elapsed, defeating the purpose of the cooperation clause. *See Azeem v. Colonial Assur. Co.*, 96 A.D.2d 123, 468 N.Y.S.2d 248, 249 (4th Dep't 1983), *aff'd*, 62 N.Y.2d 951, 479 N.Y.S.2d 216, 468 N.E.2d 54 (1984); *Dyno–Bite, supra*, 439 N.Y.S.2d at 560–61; *Lentini Bros., supra*, 428 N.Y.S.2d at 687; *Restina, supra*, 306 N.Y.S.2d at 223. In *Restina*, the insured also refused to answer questions at an EUO based on Fifth Amendment grounds. 306 N.Y.S.2d at 223. Six months later, she was eventually acquitted of all the criminal charges against her. She then notified the insurer that she would submit to the examination under oath. The court held that the refusal at the time the EUO was requested breached a key provision of the contract. "The plaintiff's willingness to submit to such examination at a later time does not change the indisputable fact that plaintiff refused to submit to such examination at the time the defendant demanded it." *Id.* at 222.

Similarly, the court in *Dyno–Bite*, held that the insured's "obligation of cooperation is not met by … partial testimony … or by promises of evidence to be supplied in some indefinite future when the criminal proceedings are concluded." 439 N.Y.S.2d at 560–61. In *Azeem*, the court held that the insured's "proffered willingness to submit to an examination under oath almost a year and a half after the examination was first scheduled and over two years after the fire does not satisfy his contractual obligation of cooperation." 468 N.Y.S.2d at 249. In *Lentini Bros.*, the court held that the insured's compliance with the insurer's subsequent demand for an examination before trial did not cure the insured's contractual default in failing to submit to the EUO. 428 N.Y.S.2d at 687.

In the present case, Longwell waited nearly nine months before offering to answer the disputed questions and more than fourteen months after the fire. Accordingly, we find as a matter of law that defendant cannot cure his default by his belated offer to answer the questions and his belated signing and return of the transcript.

## CONCLUSION

In light of all of the foregoing, we conclude that defendant has failed to raise a

---

4. Thus, we reject the defendant's argument that he substantially cooperated with Allstate such that he did not breach the condition. To have substantially cooperated, Longwell would have had to answer the material questions asked of him. His attempt at compliance did not fall short through some "technical and unimportant omissions or defects." *Bulzomi v. New York Central Mutual Fire Ins. Co.*, 92 A.D.2d 878, 459 N.Y.S.2d 861, 862 (2d Dep't 1983).

5. We note that although the first cause of action in the complaint requests declaratory relief that the policy is null and void on account of a Longwell's submission of a false proof of loss statement, Allstate did not argue in its memo-

randa in support of its summary judgment motion that the policy was void for this reason. After examining the section of the policy regarding "Concealment or Fraud" by the insured, which is found on page six of the policy, we conclude that Allstate's strategy in not proceeding on this ground was sound. Although the evidence is uncontroverted that the proof of loss statement was false, *see* Lane Aff. at ¶¶ 5–10, there remains an issue of fact with regard to Longwell's intent, *see* Affidavit of Robert Longwell, dated March 18, 1988, at ¶¶ 14–15, as the policy is only null and void if the concealment or fraud is intentional.

genuine issue of fact as to why we should not declare that his policy is null and void due to his failure to fulfill his contractual duty to cooperate. Accordingly, Allstate's motion for summary judgment is granted. Longwell's motions to dismiss and to remand are both hereby denied.

We are fully aware of the fact that in the other action (88 Civ.1746) pending before us Longwell seeks recovery *under the same policy* for the damage to the house itself. In view of our holding here, we believe that summary judgment is appropriate in that action as well. Allstate is directed to submit judgments on notice within twenty days of the date of this order.

SO ORDERED.