795 A.2d 324

STATE FARM INDEMNITY COMPANY, PLAINTIFF–APPELLANT, v. CHARLES WARRINGTON, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 17, 2002—Decided April 26, 2002.

Before Judges CONLEY, A.A. RODRÍGUEZ and LEFELT.

*Patricia Hart McGlone* argued the cause for appellant (*Ms. McGlone* and *Lillian L. Nazzaro,* on the brief).

*Charles H. Nugent, Jr.,* argued the cause for respondent.

The opinion of the court was delivered by

CONLEY, P.J.A.D.

In 1997 defendant insured was injured in an automobile accident. He received $22,768.79 from his insurer, plaintiff, in Personal Injury Protection (PIP) benefits under his automobile policy. Defendant received treatment from American Spinal, Inc., of which he was a member of its board of directors. Plaintiff sought

to investigate possible fraud and, eventually in January 2001, attempted to schedule an examination under oath pursuant to defendant's contractual obligation to cooperate.[1]

Apparently, American Spinal, Inc., was being investigated by the State Grand Jury for insurance fraud and defendant had been served a Grand Jury subpoena. There is nothing in the record before us as to the scope of the grand jury matter, except the following comments by defense counsel during oral argument:

[S]everal months ago ... the Attorney General's Office raided [American Spinal, Inc.'s, chiropractic office]. There were two Camden City police officers arrested. Actually, one was arrested who was an active City police officer. The other one was retired.

The allegation was ... that the retired officer was obtaining copies of all of the police accident reports generated during any particular week from the active police officer, who was a sergeant in the traffic division. He would then get those police accident reports. He would take them to somebody who would then knock on the doors of these accident victims and try to recruit them for medical treatment at this facility.

The Attorney General's Office has conducted an extensive investigation. They raided the offices. I have a lot of contact with the Deputy Attorney General in charge.... He has told me, my client's a target. We have received a subpoena to testify before Grand Jury. We have indicated we're exercising our Fifth Amendment privilege in that matter. For that reason, the [DAG] did not require our appearance before the Grand Jury just to assert the Fifth Amendment privilege. And, the [DAG] has told me that he expects an indictment to occur within the next three to six months ... and [Defendant] is a target of the case.

Aside from the fact that both the Grand Jury investigation and plaintiff's investigation focus upon potentially fraudulent conduct, there is no factual correlation. Defendant was a direct accident victim. He was not a recruited victim. Moreover, there is nothing in the record before us that would suggest that the impetus for the insurer's fraud investigation was to assist the State or that both are targeting the same activity. Neither is there anything in the record to suggest that plaintiff's effort to

---

[1] In this respect, defendant's automobile policy provides:

The insured shall cooperate with us and, when asked, assist us in:

a.  making settlements;

b.  securing and giving evidence;

c.  attending, and getting witnesses to attend, hearings and trials.

investigate possible fraud in connection with defendant's PIP coverage is unreasonable or in bad faith.

That defendant has a contractual obligation to submit to an examination under oath cannot be in dispute. *N.J. Auto. Full Ins. v. Jallah*, 256 *N.J.Super.* 134, 141, 606 *A.*2d 839 (App.Div.1992). *See Prudential Prop. & Cas. v. Nardone*, 332 *N.J.Super.* 126, 752 *A.*2d 859 (Law Div.2000); *Ransom v. Selective Ins. Co.*, 229 *N.J.Super.* 43, 550 *A.*2d 1006 (Law Div.1988). *See also N.J.S.A.* 39:6A–13(g). Indeed, defendant does not deny this obligation. What defendant does claim is a right not to answer any questions based upon the Fifth Amendment. He cites no legal support, aside from the following:

> The Fifth Amendment of the United States Constitution provides that "no person ... should be compelled in any criminal case to be a witness against himself." US Constitution, Amend. 5. The Fifth Amendment right against self-incrimination applies to the states through the Fourteenth Amendment. *Malloy v. Hogan*, 378 *U.S.* 1, 8, 84 *S.Ct.* 1489, 12 *L.Ed.*2d 653 (1964). The protection entitles the defendant to refuse to testify at a criminal trial, and "privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Minnesota v. Murphy*, 465 *U.S.* 420, 426, 104 *S.Ct.* 1136, 79 *L.Ed.*2d 409 (1984) (quoting *Lefkowitz v. Turley*, 414 *U.S.* 70, 77, 94 *S.Ct.* 316, 38 *L.Ed.*2d 274 (1973)). The Fifth Amendment applies to any proceeding to "disclosures which the witness reasonably believes could be used against him in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States*, 406 *U.S.* 441, 444–45, 92 *S.Ct.* 1653, 32 *L.Ed.*2d 212 (1972).

These general propositions are, as far as they go, an accurate reflection of New Jersey law. *E.g., State v. P.Z.*, 152 *N.J.* 86, 100–01, 703 *A.*2d 901 (1997). But they do not go far enough.

To begin with, the Fifth Amendment applies to a "proceeding," *Minnesota v. Murphy*, 465 *U.S.* 420, 426, 104 *S.Ct.* 1136, 1141, 79 *L.Ed.*2d 409, 418 (1984), or "action", *N.J.S.A.* 2A:84A–19, *N.J.R.E.* 503. Defendant offers no authority for the proposition that the examination under oath, required under the parties' private contract, is a "proceeding" or "action" within the protection of the Fifth Amendment. *See generally, Examination of Insured*, 16 *A.L.R.* 5th 412, § 20(a) (2001) (16 *A.L.R.* 5th 412); Michael A. Hamilton, *Property Insurance: A Call for Increased*

*Use of Examinations Under Oath For the Detection and Deterrence of Fraudulent Insurance Claims,* 97 *Dick. L.Rev.* 329, 345–56 (1993); *Couch on Insurance,* § 196.20 (3d ed.1999).

■ Moreover, with few exceptions, "the privilege is not self-executing under either federal or state law, and must be invoked by anyone claiming its protection." *State v. P.Z., supra,* 152 *N.J.* at 101, 703 *A.*2d 901. One of those exceptions, clearly not applicable here, is custodial interrogation by law enforcement officers. *Id.* 101–02, 703 *A.*2d 901. Another is where a person is subjected by the State to a choice between his or her Fifth Amendment rights and "another important interest." *Id.* at 106, 703 *A.*2d 901. As the Court observed in *P.Z.:*

Custodial interrogations by law enforcement officers are not the only special circumstances in which the Fifth Amendment privilege against self-incrimination is self-executing. *Murphy, supra,* 465 *U.S.* at 434, 104 *S.Ct.* at 1145–46, 79 *L.Ed.*2d at 423–24. Both the United States Supreme Court and our New Jersey courts have consistently held that the state may not force an individual to choose between his or her Fifth Amendment privilege and another important interest because such choices are deemed to be inherently coercive. *See Lefkowitz v. Cunningham,* 431 *U.S.* 801, 805–08, 97 *S.Ct.* 2132, 2135–37, 53 *L.Ed.*2d 1, 6–9 (1977) (holding unconstitutional statute that required political party officer to testify without immunity before grand jury or forfeit his office and be barred from holding another party office); *[Lefkowitz v.] Turley,* 414 *U.S.* [70], 75–84, 94 *S.Ct.* [316], 321–25, 38 *L.Ed.*2d [274], 281–85 [ (1973) ] *supra,* 414 *U.S.* at 75–84, 94 *S.Ct.* at 321–25, 38 *L.Ed.*2d at 281–85 (holding unconstitutional statute that compelled public contractors to testify without immunity concerning their state contracts or forfeit those contracts and be disqualified from future state dealings); *State v. Clark,* 58 *N.J.* 72, 83–92, 275 *A.*2d 137 (1971) (holding both Fifth Amendment and public policy require that neither unmarried welfare applicant nor father of her children could be prosecuted for fornication where applicant was required to institute bastardy proceedings against father to obtain benefits); *Hirsch v. New Jersey State Bd. of Med. Exam'rs,* 252 *N.J.Super.* 596, 605–09, 600 *A.*2d 493 (App.Div.1991)[, *aff'd,* 128 *N.J.* 160, 607 *A.*2d 986 (1992),] (holding physicians could not be compelled to answer questions about drug use upon threat of suspension or non-renewal of medical license without accord of immunity), *aff'd,* 128 *N.J.* 160, 607 *A.*2d 986 (1992); *see also Garrity v. New Jersey,* 385 *U.S.* 493, 499–500, 87 *S.Ct.* 616, 620, 17 *L.Ed.*2d 562, 566–67 (1967) (holding that, consistent with guarantees of Fourteenth Amendment, State may not compel police officers to answer work-related questions or lose their employment). These cases are based on the principle that the Fifth Amendment is violated "when a State compels testimony by threatening to inflict potent sanctions unless the constitutional privilege is surrendered." *Cunningham, supra,* 431 *U.S.* at 805, 97 *S.Ct.* at 2135, 53 *L.Ed.*2d at 7.

[*Id.* at 106–07, 703 *A.*2d 901.]

There is no State imposed choice here between remaining silent and risking a protectable "important interest."

Defendant points to the pending State grand jury investigation as the basis for his claimed right to assert the Fifth Amendment during the examination under oath requested by plaintiff. But, it is not transparently clear that any of the questions plaintiff might ask as to the underlying accident have any relationship to the grand jury investigation. We know of no law, and defendant cites none, that affords him a "blanket" Fifth Amendment privilege under these circumstances.

Indeed, we are convinced there is a serious question as to whether defendant has a Fifth Amendment privilege in the context of his private contractual obligations to the insurer. *Compare* cases cited in § 20[a] of 16 *A.L.R.* 5th 412, *with* those cited in § 20[b]. The weight of authority would seem to be that the Fifth Amendment privilege cannot be invoked in the context of a contractual examination under oath to avoid answering material questions. That authority posits:

> The compulsion secured against by the constitution *is a compulsion exercised by the state in its sovereign capacity in some manner known to the law. Constitutional immunity has no application to a private examination arising out of a contractual relationship.* The examination to which appellants demanded respondent should submit was an extrajudicial proceeding, not authorized by any constitutional or statutory provision, but purely by virtue of a contract between the parties. *To bring a case within the constitutional immunity, it must appear that compulsion was sought under public process of some kind.* This being so, respondent's refusal to undergo examination and produce his books and papers acquires no sanctity because he urged his constitutional right not to be compelled to be a witness against himself. The demand was made upon him by virtue of the stipulation in the contract and by the stipulation alone must his refusal be judged. The stipulation constituted a promissory warranty under which appellants had the right to demand compliance by respondent "as often as required," and the performance of such stipulation was a condition precedent to any right of action.
> [*Hickman v. London Assur. Corp.,* 184 *Cal.* 524, 195 *P.* 45, 49 (1920) (emphasis added).]

In contrast, the only reported case cited in 16 *A.L.R.* 5th 412 as reaching a different result did so in the context of an examination under oath that was required by state law under circumstances

such that the insurer was, in effect, a conduit for information for the State's criminal investigation. *Weathers v. American Family Mut. Ins. Co.*, 793 *F.Supp.* 1002, 1022 (D.Kan.1992). The Court there explained:

[Defendant insurer] now objects to the court's findings and contends that plaintiff and her son did not have a right to exercise their Fifth Amendment rights during their examinations under oath. In support of its position, [defendant] relies on several cases from other jurisdictions that have held that an insured cannot invoke his or her Fifth Amendment rights in an examination under oath because the compulsion to testify arose solely from the terms of a private contract. However, the cases cited by [defendant] are factually distinguishable from the case at bar. Specifically, none of the cases relied upon by [defendant] involved a situation where the insurer was conducting itself pursuant to an arson reporting immunity act, as was [defendant] in this case. More importantly, none of the cited cases discuss the effect of an arson reporting immunity act upon an insured's duty to submit to an examination under oath. *See, e.g., Pervis v. State Farm Fire and Casualty Co.*, 901 *F.*2d 944 (11th Cir.1990), *cert. denied*, 498 *U.S.* 899, 111 *S.Ct.* 255, 112 *L.Ed.*2d 213 (1990). *In the instant case, the court has no doubt that any information revealed to [defendant] during the examinations under oath would have in turn been given to the state for later use against plaintiff at her criminal trial.* For [defendant] to assert that plaintiff's or her son's Fifth Amendment rights were not operable at their examinations under oath is absurd. If [defendant's] argument had merit, then an insured in the plaintiff's position would have to choose between possibly breaching her insurance contract and forfeiting her benefits thereunder or revealing critical information to state authorities which could be used against her in a criminal prosecution. Such a position is simply unacceptable and offensive to constitutional sensibilities.

[*Ibid.* (emphasis added).]

Most of the cases discussed in 16 *A.L.R.* 5th 412 arise in the context of an insured who has filed a suit for coverage under an insurance policy but has refused to comply with the insurer's request for an examination under oath. Most involve fire damage coverage and claims of arson. The universal rule, in that context, is that the insured cannot use the Fifth Amendment, on the one hand, to avoid the contractual obligation to cooperate with the insurer, and, on the other hand, compel the insurer to provide coverage. *See Pervis v. State Farm Fire & Cas. Co.*, 901 *F.*2d 944, 947 (11th Cir.), *cert. denied*, 498 *U.S.* 899, 111 *S.Ct.* 255, 112 *L.Ed.*2d 213 (1990); *Kisting v. Westchester Fire Ins. Co.*, 290 *F.Supp.* 141, 149 (W.D.Wis.1968); *Warrilow v. Superior Ct. of Arizona*, 142 *Ariz.* 250, 689 *P.*2d 193, 197 (Ct.App.1984); *Hickman*

*v. London Assur. Corp., supra,* 195 *P.* at 49; *Standard Mut. Ins. Co. v. Boyd,* 452 *N.E.*2d 1074, 1079 (Ct.App.Ind.1983); *Mello v. Hingham Mut. Fire Ins. Co.,* 421 *Mass.* 333, 656 *N.E.*2d 1247, 1250 (1995); *Abraham v. Farmers Home Mut. Ins. Co.,* 439 *N.W.*2d 48, 50 (Ct.App.Minn.1989); *Gross v. United States Fire Ins. Co.,* 71 *Misc.*2d 815, 337 *N.Y.S.*2d 221, 224 (Sup.Ct.1972). The majority view is premised upon the understanding that the compulsion secured by the Constitution is "a compulsion exercised by the State in a sovereign capacity in some manner known to the law.... To bring a case within the constitutional immunity, it must appear that compulsion was sought under public process of some kind." *Hickman, supra,* 195 *P.* at 49. *See Warrilow, supra,* 689 *P.*2d at 197.

The issue here as to defendant insured's right to refuse to answer questions at an examination under oath does not arise in the context of litigation brought by an insured seeking coverage, yet refusing, on the grounds of the Fifth Amendment, the contractually required cooperation. Defendant has already been provided the requested coverage. The assertion of a Fifth Amendment right arises in the context of the insurer's separate efforts to investigate possible fraud and where no claim has been raised that such investigation is not rationally warranted. It arises, as well, in the context of no claim by defendant of any State involvement, a claim which, had it been made premised upon the legislative insurance fraud preventative measures, might seem to be dubious. *Cf. Allstate Ins. Co. v. Longwell,* 735 *F.Supp.* 1187, 1194 (S.D.N.Y. 1990) ("The mere fact that the State has mandated [that cooperation clauses in fire insurance policies] appear in the policy, which are protective of both the insured and the insurer, does not mean that the policy is somehow transformed into anything other than a private contractual relationship."). *See also United States v. Moeller,* 402 *F.Supp.* 49, 56 (D.Conn.1975); *State v. Hovrud,* 60 *Wash.App.* 573, 805 *P.*2d 250, 251 (1991), *rev'd denied,* 117 *Wash.*2d 1005, 815 *P.*2d 265 (1991). *But see Weathers v. American Family Mut. Ins. Co., supra,* 793 *F.Supp.* at 1022.

Moreover, the appeal arises in the context of a blanket refusal on the part of defendant to answer any questions so that the materiality of any particular question cannot be determined. *See e.g., Allstate Ins. Co. v. Longwell, supra;* 735 *F.Supp.* at 1194 ("We must next consider whether the questions Longwell refused to answer at his EUO were material."). The factual scenario here is similar to that in *Hudson Tire Mart, Inc. v. Aetna Cas. & Sur. Co.,* 518 *F.*2d 671 (2d Cir.1975). There, the insured on a fire policy sought to enjoin the insurer from conducting an examination under oath pursuant to a cooperation provision in the policy. Arson was suspected. The insured asserted that the Fifth Amendment required an injunction, precluding the answering of any questions. In rejecting this contention, the court noted that "a refusal to appear for an examination whether pursuant to a contract or court order, is in a different category than a refusal to answer questions protected by the Fifth Amendment. . . ." *Id.* at 674. It further observed:

It is true that New York courts have held that failure of the insured to appear for examination does constitute a material breach of the contract .. *but since there are numerous relevant matters with respect to which an insured may be examined without necessarily incriminating himself, the requirement of his appearance alone in no way violates his due process rights. Only after the incriminating question is asked, is he in a position to assert his immunity and seek a protective order. Siegel v. Crawford, supra*[, 292 *N.Y.* 651, 55 *N.E.*2d 516(1944) ]. *Consequently at this stage of the proceedings the dilemma which the appellant attempts to present is a fictitious one.* ... the appellant fails to recognize the distinction between the obligation of the insured to appear for the examination and its right to claim such constitutional immunity that might be available to it at the examination.[1]

1. Whether the insured can successfully assert its Fifth Amendment rights if it sues upon the policy, is another question which is not now before us. *Kisting v. Westchester Fire Insurance Co.,* 290 *F.Supp.* 141 (W.D.Wis.1968), *aff'd,* 416 *F.*2d 967 (7th Cir.1969); *Levine v. Bornstein,* 6 *N.Y.*2d 892, 190 *N.Y.S.*2d 702, 160 *N.E.*2d 921 (1959).

[*Id.* at 674–75 (emphasis added).]

*See also United States Fid. & Guar. Co. v. Wigginton,* 964 *F.*2d 487 (5th Cir.1992).

Of course, one may always refuse to answer a question. But whether there is a legal right to do so, such that no untoward consequences arise is the question. Here, at the least, a refusal to

comply with his contractual obligation may subject defendant to preclusion of PIP benefits. *N.J. Auto. Full Ins. v. Jallah, supra,* 256 *N.J.Super.* at 142, 606 *A.*2d 839. We hasten to point out, as to this, that there is no indication in the record before us that there remains any unpaid PIP claims and, as far as we can tell, plaintiff's complaint does not seek to recoup prior payments. But counsel acknowledged during oral argument that defendant's refusal to answer material questions would subject him to the risk of being compelled to repay the PIP benefits he has received.

We are convinced that whether defendant may properly invoke his Fifth Amendment right and, if so, what consequences should flow therefrom are far too important to resolve in the present setting. To begin with, the parties have only half briefed the issues, at best. More importantly, they are not easily resolvable without knowing precisely what questions plaintiff seeks to ask and what information it wishes to probe. As we said at the outset, the defendant's accident and what little we know of the State's investigation do not directly correlate with each other. Plaintiff may well ask questions that would not subject defendant to possible criminal penalty. Indeed, by the time of its examination, defendant may no longer be a criminal target. Furthermore, the trial judge may consider staying the examination until resolution of the criminal proceedings, unless plaintiff can establish some overriding urgency in its investigation. *See e.g. Whippany Paper Bd. Co. v. Alfano,* 176 *N.J.Super.* 363, 373–74, 423 *A.*2d 648 (App.Div.1980). *See also, State v. Kobrin Securities, Inc.,* 111 *N.J.* 307, 316–17, 544 *A.*2d 833 (1988).

But the point is, plaintiff has a right to conduct an examination under oath. Whether defendant may properly assert a Fifth Amendment privilege and not answer incriminating questions is highly questionable, but at the least he does not have a "blanket" right to refuse all questions. If he refuses to answer some questions, whether that refusal was the product of a legal exercise of the Fifth Amendment and what consequences may be triggered by such refusal, can then be addressed by the trial judge.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.