NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2545-19

BOROUGH OF FRANKLIN,

     Plaintiff-Respondent,

v.

JEFFREY R. SMITH,

     Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **March 8, 2021**
>
> **APPELLATE DIVISION**

Submitted January 6, 2021 – Decided March 8, 2021

Before Judges Sumners, Geiger and Mitterhoff.

On appeal from the Superior Court of New Jersey,
Law Division, Sussex County, Docket No. L-0566-19.

Caruso Smith Picini, PC, attorneys for appellant
(Timothy R. Smith and Wolodymyr P. Tyshchenko, of
counsel; Sara B. Liebman, on the briefs).

Cleary Giacobbe Alfieri Jacobs, LLC, attorneys for
respondent (Matthew J. Giacobbe, of counsel and on
the brief; Victoria A. Leblein, on the brief).

The opinion of the court was delivered by

SUMNERS, JR., J.A.D.

This appeal requires us to determine if a police officer employed in a

non-civil service municipality can be subpoenaed to testify in the

municipality's case-in-chief at a departmental disciplinary hearing seeking his termination. We conclude the subpoena violates neither fundamental fairness and due process nor statutory procedures governing discipline of a police officer in a non-civil service municipality. We further conclude that absent an objection to a specific question, it is premature to determine whether there is a violation of the officer's Fifth Amendment constitutional right against self-incrimination. Accordingly, we affirm the Law Division order granting the municipality's request to enforce the subpoena.

I

The essential facts are not in dispute. Defendant Jeffrey R. Smith was suspended from his position as a lieutenant with the Borough of Franklin (Borough) Police Department because of an internal affairs investigation triggered by the positive results of a random drug test. The Sussex County Prosecutor's Office (SCPO) concluded Smith had engaged in criminal conduct by obtaining prescription drugs by fraud but declined to prosecute.[1] The

---

[1] First Assistant Prosecutor Gregory R. Mueller wrote a letter to Borough Police Chief Eugene McInerney stating: "I want to emphasize that our [o]ffice has concluded that Lt. Smith engaged in criminal conduct, specifically by illegally obtaining [controlled dangerous substances] by [f]raud. Our [o]ffice, therefore, has the ability to prosecute Lt. Smith for this conduct." However, the letter stated further that, in exercise of prosecutorial discretion, the office chose not to initiate criminal proceedings because it believed Smith "must be[] terminated for his conduct[,]" which is a "very substantial penalty. . . ."

SCPO instead referred the matter back to the police department for administrative disciplinary proceedings. Smith was not offered immunity from prosecution.

The Borough moved forward with termination proceedings. Smith, in turn, requested a departmental hearing, where a hearing officer would "determine the charge . . . made against [him], [and would] have the power to subpoena witnesses and documentary evidence[,]" unless prohibited by law. N.J.S.A. 40A:14-148.

At the Borough's request, the hearing officer issued a subpoena requiring Smith to testify on behalf of the Borough at the departmental hearing. The subpoena was properly served on Smith, who made no application to quash it.

The Borough called Smith as its first witness at the hearing. Smith's counsel objected, arguing that the Borough could not call Smith "as the first witness[,]" and that, as Smith's counsel, he "should be given an opportunity to call . . . Smith first," in defense of the charges. Counsel maintained that "[d]oing it in [the Borough's] order is very disadvantageous, unfair to [Smith] at this point in time before you have a [single] witness put on the stand and the evidence is laid out against [Smith]." The Borough responded that Smith failed to quash the subpoena and that no law dictated the order in which subpoenaed witnesses could be called. The hearing officer ruled that Smith

3                                                                A-2545-19

must testify when called by the Borough and that after the hearing he would consider the parties' submissions to determine if Smith's testimony on behalf of the Borough should be stricken. Smith's counsel refused to allow Smith to testify, causing the hearing to be adjourned.

To enforce its subpoena, the Borough filed an order to show cause and verified complaint in the Law Division for an order under N.J.S.A. 40A:14-148.[2] The statute provides that, "[e]xcept as otherwise provided by law, the officer, board[,] or authority empowered to hear and determine the charge or charges made against a member or officer of the police department or force, shall have the power to subpoena witnesses and documentary evidence." N.J.S.A. 40A:14-148.

After considering the parties' legal submissions and argument, Judge David J. Weaver granted the Borough's request, explaining his reasoning in an oral decision. Noting no specific caselaw controlled the Borough's application, the judge found support in state and federal evidentiary rules and statutes. In rejecting Smith's argument that he need only testify in his own defense, and only then be cross-examined by the Borough, the judge reasoned:

---

[2] The Borough also sought sanctions against Smith's counsel, seeking reimbursement of the reasonable costs and fees associated with the Law Division action and the adjourned disciplinary hearing. The request was denied. It is not an issue before us.

A-2545-19

I don't believe that the law supports that necessarily or demands that that occur. New Jersey Rule of Evidence 611(c) expressly permits a party [to call an] adverse party as a witness and subject to the court's discretion to interrogate through the use of leading questions.

. . . .

And in [N.J.S.A.] 2A:81-6, "In all civil actions in any court of record a party shall be sworn and shall give evidence when called by the adverse party, but no party shall be compelled to be sworn or give evidence in any action brought to recover a penalty or to enforce a forfeiture. This section shall not be applied to actions for divorce."

The judge also cited N.J.S.A. 2A:81-11, which states, "[e]xcept as otherwise provided by law, when any party is called as a witness by the adverse party[,] he shall be subject to the same rules as to examination and cross-examination as other witnesses." In addition, the judge pointed to Fed. R. Evid. 611(c), explaining it "permits a party to call an adverse witness . . . to interrogate him [with] leading questions."

The judge relied upon case law from New Jersey and other jurisdictions standing for the proposition that a party can call another party to testify in a civil action. See State v. Rajnai, 132 N.J. Super. 531, 541 (App. Div. 1975) (citation omitted) ("While broad latitude may be allowed in examining a hostile witness, especially a party called by his adversary in a civil action, . . . it is clear that prior testimony, not itself offered in evidence, may be used in a

5

limited fashion to refresh the recollection of a non-hostile witness."); <u>Crothers v. Caroselli</u>, 126 N.J.L. 590, 592-93 (1941) (finding that when called by the adverse party, it is compulsory for a party to be sworn and testify); <u>Scenic Holding, LLC v. New Bd. of Trs. of Tabernacle Missionary Baptist Church, Inc.</u>, 506 F.3d 656, 664 (8th Cir. 2007) (noting that a party can conduct an examination using leading questions when an adverse witness is called); and <u>Mathews v. Hines</u>, 444 F. Supp. 1201, 1208 (M.D. Fla. 1978) (finding that Fed. R. Evid. 611(c) allows one party to call another as an adverse witness).

Furthermore, the judge found that N.J.A.C. 4A:2-2.6(c), which provides an "employee shall not be required to testify, but an employee who does testify will be subject to cross-examination[,]" did not apply to Smith's departmental hearing. The regulation only applies to civil service jurisdictions under Title 4 of the New Jersey Administrative Code and the Civil Service Act, N.J.S.A. 11A:1-1 to 12-6, and the Borough is a non-civil-service jurisdiction.

Judge Weaver expressly limited the scope of his decision, declining to rule on Smith's Fifth Amendment self-incrimination argument. The judge remarked:

> my function under [N.J.S.A. 40A:14-148] is a very limited one. I'm . . . not here as an overseer of every potential question that may be asked or to rule on . . . evidence or [such questions], I am here to enforce a subpoena.

A-2545-19

> Do I think the subpoena is enforceable? Yes, okay, based on . . . what I've just stated in the record. However, I don't believe it's necessary to rule on a privilege that may or may not be raised as to self-incrimination at this juncture, and that's mainly because the defendant admits that the privilege may not be invoked and at this time . . . defendant is not definitively invoking the privilege.

In addition, the judge noted Smith's counsel said he intended to call Smith to testify in defense of the charges. He concluded: "nothing prohibits, prevents [Smith] from being called on [the Borough's] case[-]in[-]chief."

II

Before us, Smith contends the order enforcing the Borough's subpoena violates fundamental fairness and due process as well as the legislative intent of N.J.S.A. 40A:14-150. Relying upon the doctrine of fundamental fairness articulated in Doe v. Poritz, 142 N.J. 1, 109 (1995), Smith asserts that requiring him to testify as the Borough's first witness is unjust and arbitrary governmental action. He maintains the unfairness is amplified by the fact that as a public employee, he was compelled to give a statement during the Borough's internal affairs investigation. Thus, he characterizes the subpoena as "oppression [and] harassment." Id. at 108 (quoting State v. Yoskowitz, 116 N.J. 679, 712 (1989) (Garibaldi, J., concurring and dissenting)). In addition, Smith contends requiring him to testify first for the Borough, is fundamentally unfair and violates administrative due process "because it is calculated to force

7

him to testify before he has heard a single witness testify against him[,]" and "deprive[s] [him] of a meaningful opportunity to be heard and to defend himself."

Smith argues his position is bolstered by the New Jersey Attorney General Internal Affairs Policy and Procedures, which provide that when administrative charges have been filed against a police officer in a civil service jurisdiction,[3] fairness ought to preclude further questioning of the officer and he cannot be compelled to provide a statement. Off. of the Att'y Gen., Internal Affairs Policy & Procedures § 8.4.2 (Dec. 2019). Even though the Borough is a non-civil service jurisdiction, Smith argues the distinction with a civil service jurisdiction is "meaningless and illusory."

Smith likewise argues that because a police officer in a civil service jurisdiction may refuse to testify at his or her disciplinary hearing under N.J.A.C. 4A:2-2.6(c), the same right should apply to officers in non-civil service jurisdictions. Further, according to Smith, the legislative intent behind N.J.S.A. 40A:14-150, which governs discipline of police officers in non-civil service jurisdictions, supports his position that "there is no practical difference" between a civil service and a non-civil service jurisdiction.

---

[3] In accordance with N.J.A.C. 4A:2-2.6(c).

We appreciate Smith's contention that a police officer employed by a non-civil service jurisdiction should have the same right not to be compelled to testify at the officer's departmental hearing as does a police officer employed by a civil service jurisdiction. We conclude, however, Judge Weaver correctly ordered that based on N.J.S.A. 40A:14-148, the Borough's subpoena requiring Smith to testify on its behalf should be enforced irrespective of the order in which he is called. Proceedings governing the termination of a police officer in a non-civil service jurisdiction are set forth in N.J.S.A. 40A:14-147 to -151. Ruroede v. Borough of Hasbrouck Heights, 214 N.J. 338, 343 (2013).

A civil service jurisdiction operates under the Civil Service Act, N.J.S.A. 11:20-1 to 11:20-8. See Grasso v. Borough Council of Glassboro, 205 N.J. Super. 18, 22 (App. Div. 1985). N.J.A.C. 4A:2-2.6(c) was enacted shortly after 2009 amendments to the statutory scheme were made to "enhance[] the rights of certain disciplined police officers and firefighters." In re DiGuglielmo, 465 N.J. Super. 42, 53 (App. Div. 2020). Because the language of N.J.S.A. 40A:14-150 is clear and does not "lead[] to an absurd result," there is no need to look towards legislative intent for guidance. See Tasca v. Bd. of Trs., Police & Firemen's Ret. Sys., 458 N.J. Super. 47, 56 (App. Div. 2019) (quoting Tumpson v. Farina, 218 N.J. 450, 468 (2014) (alteration in original)).

Smith accurately asserts that the legislative history of N.J.S.A. 40A:14-150 indicates the statute was intended to "make more uniform the statutory provisions concerning the discharge of employees in counties and municipalities not operating under [civil service jurisdictions]."  Grasso, 205 N.J. Super. at 24 (quoting Senate Cnty. and Mun. Gov't Comm. Statement, Comment, N.J.S.A. 40A:9–25 (1985 Supp.)).  His interpretation, however, of Grasso is overly broad and, as noted above, misconstrues the uniformity sought by the Legislature.

As we reasoned in  Grasso,

> N.J.S.A. 40A:14–150 was enacted for the benefit of public employees not subject to civil service to provide them with protection from arbitrary, unreasonable, biased or prejudicial action of the municipal officials by providing a right to a de novo hearing on the conviction of the charges of breach of discipline and sentence imposed.

[205 N.J. Super. at 27.]

Uniformity was sought to ensure that employees in non-civil service jurisdiction were treated the same.  The statute cannot be read to mean, however, that non-civil service employees subject to disciplinary action are entitled to the same process.

To agree with Smith's contention would be tantamount to judicially enacting a regulation like N.J.A.C. 4A:2-2.6(c) for non-civil service

10

jurisdictions by precluding the Borough from compelling his testimony. The Legislature has chosen not to extend this regulatory limitation to non-civil service jurisdictions since the adoption of N.J.A.C. 4A:2-2.6(c) by the Civil Service Commission in 2009. See 41 N.J.R. 2720(a) (2009). It is not within our authority to create functional equivalents for non-civil service jurisdictions where there is no clear basis to do so in the statutory or regulatory language. See Trainor v. Burlington Cnty. Bd. of Chosen Freeholders, 216 N.J. Super. 289, 292 (App. Div. 1987) ("If [statutory] language is clear, we are not free to prescribe a meaning beyond it, for to do so would violate the separation of powers doctrine."). Accordingly, there is no basis to conclude that N.J.A.C. 4A:2-2.6(c)'s bar to compelling a police officer to testify at a disciplinary hearing in a civil service jurisdiction, should apply to the Borough's non-civil service proceedings against Smith.

We agree with Judge Weaver that Smith's reliance on the Attorney General's Guidelines, which preclude questioning of a police officer in a disciplinary hearing, is misplaced. Similar to the prohibitions in N.J.A.C. 4A:2-2.6(c), the guidelines only apply to civil service jurisdictions.

As for Smith's fundamental fairness and due process arguments, he has not demonstrated that the Borough's ability to subpoena him and have him testify in the order it chooses, impacts his rights at the disciplinary hearing.

"The doctrine of fundamental fairness 'serves to protect citizens generally against unjust and arbitrary governmental action, and specifically against governmental [procedures] that tend to operate arbitrarily.'" State v. Saavedra, 222 N.J. 39, 67 (2015) (quoting Doe, 142 N.J. at 108). The doctrine is applied "sparingly" and only where the "interests involved are especially compelling[;]" if a defendant would be subject "to oppression, harassment, or egregious deprivation[.]" Doe, 142 N.J. at 108 (quoting Yoskowitz, 116 N.J. at 712).

In support of his contention, Smith misplaces reliance on Nicoletta v. N. Jersey Dist. Water Supply Comm'n, 77 N.J. 145, 166 (1978) and Ruroede, 214 N.J. at 358-60, which only provide he has a right to present evidence, confront witnesses, and be represented by counsel at his hearing. There were no such deficiencies here. The Borough's subpoena did not deny Smith the right to testify or confront witnesses, and it was through his atorney's advice that he chose not to honor the subpoena. Smith has not identified any civil or administrative law standards preventing the Borough from subpoenaing him to testify. The Borough's decision to have Smith testify first is a proper exercise of its hearing strategy. After testifying for the Board, Smith would have a second opportunity to speak when he presented his defense.

Thus, Judge Weaver did not abuse his discretion in enforcing the subpoena and did not misapply the law. See Wasserstein v. Swern & Co., 84 N.J. Super. 1, 6 (App. Div. 1964) (holding the decision to quash a subpoena is reviewed under an abuse of discretion standard, provided the ruling is consistent with applicable law). The judge's reliance upon relevant state and federal rules of evidence was sound reasoning. These standards clearly set forth the overriding principle that, in a civil proceeding, it is appropriate for a party to call an adverse party to support its proofs.

## III

Lastly, we address Smith's contention that his Fifth Amendment right not to incriminate himself when subpoenaed by the Borough should have been addressed by Judge Weaver. He asserts that his testimony would not be protected under Garrity v. New Jersey, 385 U.S. 493, 500 (1967), and could be used against him in a subsequent criminal prosecution. We reject these contentions.

"The right against self-incrimination is guaranteed by the Fifth Amendment to the United States Constitution and this state's common law, now embodied in statute, N.J.S.A. 2A:84A-19, and evidence rule, N.J.R.E. 503." State v. S.S., 229 N.J. 360, 381-82 (2017) (quoting State v. Nyhammer, 197 N.J. 383, 399 (2009)). The Fifth Amendment provides that "[n]o person . .

13                                                                                    A-2545-19

. shall be compelled in any criminal case to be a witness against himself . . . ." U.S. Const. amend. V.  Protection against self-incrimination "applies only when the accused is compelled to make a testimonial communication that is incriminating." Fisher v. United States, 425 U.S. 391, 408 (1976).

Here, Smith declined to testify, arguing that the Borough did not have the right to call him to testify as the first witness in its case-in-chief.  Because he refused to testify and was not posed any questions, as the judge correctly noted, Smith never exercised his Fifth Amendment right.   The Fifth Amendment privilege is not a blanket immunity.  A party "does not have a 'blanket' right to refuse all questions."  State Farm Indem. Co. v. Warrington, 350 N.J. Super. 379, 388 (App. Div. 2002).  To execute a "particularized inquiry[,]" the court must consider on a question-by-question basis whether each "might elicit [an] incriminatory answer[] . . . ."  United States v. Bowe, 698 F.2d 560, 566 (2d Cir. 1983); see In re Ippolito, 75 N.J. 435, 439 (1978) (explaining how the Superior Court evaluated a witness's privilege claims on a question-by-question basis).  However, "we [do not] decide a case based on facts which are undeveloped or uncertain . . . ."  State v. Tormasi, ___ N.J. Super. ___ (App. Div. 2021) (slip op. at 24) (quoting N.J. Ass'n for Retarded Citizens, Inc. v. N.J. Dep't of Human Servs., 89 N.J. 234, 241 (1982)).

14

We cannot rule in the abstract when there was no question to which Smith's counsel objected and upon which the hearing officer had to rule. As the Third Circuit has held:

> The task of discerning the self-incriminating from the non-incriminating falls upon the witness asserting the privilege in the first instance. This, however, is merely a subjective judgment. The juridical responsibility of objectively assessing whether the silence is justified rests with the court. The court, however, cannot effectively determine whether "a responsive answer to a question or an explanation of why it cannot be answered might be (incriminating)" except in the context of a propounded question.
>
> [Nat'l Life Ins. Co. v. Hartford Accident. & Indem. Co., 615 F.2d 595, 598 (3d Cir. 1980) (citing Hoffman v. United States, 341 U.S. 479, 487 (1951)).]

Hence, we have no reason to disagree with the judge's decision not to determine if Smith's right against self-incrimination was violated.

Smith's Garrity rights would not be violated when he testifies under subpoena. In Garrity, the United States Supreme Court ruled "the protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office, and . . . it extends to all, whether they are policemen or other members of our body politic." 385 U.S. at 500. Smith invoked his Garrity rights at his internal affairs investigation. Should he do likewise at the departmental hearing, his statements could not be used against

15

him in a criminal prosecution.[4]  See United States v. Hubbell, 530 U.S. 27, 38 (2000) (noting that Fifth Amendment protects "against the prosecutor's use of incriminating information derived directly or indirectly from . . . compelled testimony . . . .").  Of course, should Smith testify in his own defense, the use of that testimony in any criminal prosecution may result in a different outcome.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4]  As set forth above in footnote 1, the SCPO indicated that it decided not to prosecute Smith and that the Borough should seek his termination.  However, there is no indication this decision is binding and cannot be reversed, especially should the Borough not be successful in terminating Smith. Moreover, as Smith points out, the SCPO has not given him immunity from prosecution.

A-2545-19