**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2744-18T3

GARY MATARAZZO,
EXECUTOR OF THE ESTATE
OF MARIA D. MATARAZZO,
Deceased,

      Plaintiff-Respondent,

v.

JOSEPH J. TALAFOUS, a/k/a
JOSEPH J. TALAFOUS, JR.,

      Defendant-Appellant.

_____

Submitted April 29, 2020 – Decided June 29, 2020

Before Judges Koblitz and Whipple.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-4047-17.

Miller Meyerson & Corbo, attorneys for appellant (Gerald D. Miller, of counsel and on the briefs).

Walsh & Walsh, LLC, attorneys for respondent (John K. Walsh, Jr., of counsel and on the brief).

PER CURIAM

Defendant Joseph J. Talafous, Jr., appeals from the February 12, 2019 judgment entered after a bench trial in favor of plaintiff Gary Matarazzo, executor of the estate of Maria D. Matarazzo (the estate).

We discern the following facts from record. Plaintiff became friendly with defendant because defendant's father previously represented plaintiff in a worker's compensation matter related to his company. On May 12, 2012, Maria D. Matarazzo, a resident of New York and plaintiff's aunt, died testate. Plaintiff engaged defendant to provide legal services to plaintiff in connection with the administration of her four-million-dollar estate.

Maria's will identified plaintiff's deceased father as the estate's executor. Defendant told plaintiff he would make him the executor and prepared papers to that effect and secured the signatures of plaintiff's siblings. Defendant then went to the Surrogate of Hudson County to make plaintiff the sole executor of Maria's estate. Defendant was not licensed to practice law in New York, but, told plaintiff "since [plaintiff is] a friend he would take care of [him] like no other lawyer would . . . be able to." Although plaintiff testified as to certain acts defendant undertook in connection with the estate, such as opening bank accounts and creating a corporation, defendant never sent plaintiff any invoices nor any statements indicating the nature of his services or an hourly rate.

A-2744-18T3

In May 2015, defendant told plaintiff he ran into some legal trouble and that John K. Walsh, Jr. – plaintiff's counsel in the present matter – would handle matters going forward, as he was licensed in New York and defendant had planned to utilize him for the estate work because property, such as Maria's hair salon business, was located in New York. Although defendant told plaintiff he periodically paid Walsh, he never presented any bills to plaintiff. Defendant was suspended from the practice of law on May 20, 2015 and disbarred on July 13, 2015. In re Talafous, 222 N.J. 127 (2015).

On May 16, 2016, a New Jersey Grand Jury issued a nineteen-count superseding indictment charging defendant with theft by deception and the misapplication of entrusted property. On January 10, 2018, a jury convicted defendant on all but one of the nineteen counts. In November 2018, defendant was sentenced to twenty-six years in prison. We affirmed his conviction in State v. Talafous, A-3594-17 (App. Div. June 10, 2020).

By letter dated March 22, 2017, plaintiff requested fee arbitration, but the Fee Arbitration Committee, which found the sum alleged was beyond its jurisdiction, denied his request. On June 13, 2017, plaintiff filed a complaint seeking reimbursement of the $353,362.46 in legal fees he paid defendant for unknown services or "such amount representing the difference between the

reasonable value[] of the services rendered and the amount paid by the Plaintiff." Defendant answered, denying plaintiff was entitled to any refund.

In April 2018, plaintiff served interrogatories and document demands but defendant never responded nor did he provide any documents he intended to utilize at trial or a list of potential witnesses. On May 25, 2018, the trial court entered an order authorizing defendant's deposition at South Woods State Prison, where he was serving his sentence. However, defendant advised he would assert his Fifth Amendment privilege against self-incrimination. On November 19, 2018, the trial court denied defendant's request for a stay until the completion of his criminal appeal and ordered plaintiff to proceed with a proof hearing as defendant lacked standing to testify on his own behalf and his appearance at trial would be meaningless due to his assertion of the self-incrimination privilege.

On January 28, 2019, the parties appeared for a bench trial on the matter. The trial judge first addressed defendant's request to call Walsh as a witness. Defendant argued that Walsh already testified in the criminal trial concerning the payments he received from defendant in connection with the estate and his current representation presented an issue under the Rules of Professional Conduct (RPC) 3.7. Defendant intended to call Walsh as a witness in order to elicit testimony regarding the services rendered by defendant. Plaintiff argued

defendant's failure to respond to any discovery requests and the assertion of his self-incrimination privilege barred him from calling any witnesses. Plaintiff further argued Walsh's testimony in the criminal trial concerned Walsh's own efforts in administering the estate and that, should the trial court allow the testimony, the RPC 3.7 issue could be resolved by having another attorney from his office testify concerning interactions with defendant.

After reviewing the pre-trial history, the judge stated

> So the point being that it was Judge Polifroni's opinion that the defense had no standing to testify, and that the participation of the defense would be to challenge the proofs . . . presented, in that the defendant would not have standing to testify. So even if this court views this as a motion in limine to bar the defendant from calling witnesses . . . or testifying, [t]he [c]ourt would grant that motion in that the defendant, having failed to participate in discovery, should not, in essence, be permitted to do, in essence, the same thing by calling Mr. Walsh as a witness, as part, I guess, of a challenge to the proofs.

The trial judge further noted Walsh's previous testimony "would be of record, and whatever that testimony was there would have been a transcript of it available . . . ."

The court denied defendant's application to call Walsh as a witness "having made the determination that the defendant is not permitted to either testify in his own behalf or call witnesses on his own behalf." The court also

5

declined to rule "on RPC 3.7 . . . because [t]he [c]ourt [did] not have enough information before it absent a full hearing on the in limine application . . . ." At the close of plaintiff's case, the court allowed defendant to put a proffer on the record concerning Walsh's testimony because defense counsel planned to question him regarding his various interactions with defendant. Namely, the administration of the estate as the information was relevant to any services rendered by defendant to the estate.

In a letter opinion dated January 29, 2019, the court found the facts demonstrated defendant received nineteen checks totaling $353,262.46 from the estate and Walsh received three checks from defendant totaling $7,951.85. The court found plaintiff established a prima facie case that it was entitled to $345,310.61, the difference between the money paid to defendant and the money paid to Walsh. The court then shifted "the burden . . . to defendant to prove the sum is less, or as set forth in defendant's answer to the complaint, that plaintiff is owed nothing." The judge noted her disagreement with defendant's proffer stating the proffer failed

> to set forth how an attorney, handling other aspects of
> the . . . [e]state, would be able to competently testify
> regarding services performed, the retainer agreement,
> amounts paid by [defendant] to other attorneys who are
> alleged to have performed work on the [e]state, or
> credits to which [defendant] is allegedly entitled for

A-2744-18T3

work done by accountants or other professionals in connection to the [e]state.

The court found plaintiff was a credible witness and concluded it was clear that he trusted defendant and never saw any documentation related to services rendered on the estate's behalf. The court also found testimony concerning the eligibility of other family members as executors of the estate, and the work performed regarding plaintiff's father's prior estate, were not germane to its determination of what defendant owed plaintiff.

On February 12, 2019, the court entered a judgment awarding plaintiff $345,310.61 plus interest. On March 18, 2019, the trial court entered an additional order directing defendant to pay attorney's fees to plaintiff in the amount of $27,408.95. This appeal followed.

On appeal, defendant argues the trial court erred by not permitting him to produce evidence relating to the services rendered. Defendant also argues the court failed to give him credit for the services he provided. He contends that plaintiff acknowledged services had been rendered by him and the court should have required plaintiff to provide proof as to the reasonable value of the services or allowed defendant to present proof of the services rendered.

"[W]e apply an abuse of discretion standard to decisions made by [the] trial court[] relating to matters of discovery." Pomerantz Paper Corp. v. New

Cmty. Corp., 207 N.J. 344, 371 (2011). However, a trial court's interpretation of the law is not entitled to any special deference. State v. Pomianek, 221 N.J. 66, 80 (2015) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Rule 4:23-1 provides that a party may apply for an order to compel discovery. In circumstances "where a party to civil litigation refuses to submit to discovery because of the assertion of the privilege against self-incrimination, it is clear that the party asserting the privilege legitimately cannot be held in contempt . . . ." Pressler & Verniero, Current N.J. Court Rules, cmt. 2.1. on R. 4:23-1. Nevertheless, it is appropriate "to permit the party asserting the privilege to testify at trial and direct[] that party to furnish a list of all trial witnesses intended to be called for pretrial deposition purposes." Pressler & Verniero, cmt. 2.1. on R. 4:23-1. "It would not, however, be appropriate to permit the plaintiff to recover judgment against the party asserting the privilege without requiring the plaintiff to introduce proofs and having his witness cross-examined." Pressler & Verniero, cmt. 2.1. on R. 4:23-1.

Before trial defendant refused to answer interrogatories, produce documents, identify witnesses and be deposed by asserting, in good faith, his privilege against self-incrimination. When we consider defendant's refusal to

provide discovery, we are fully cognizant his invocation of the privilege against self-incrimination during a civil proceeding places him in a difficult posture. In Mahne v. Mahne, 66 N.J. 53, 58 (1974), the Court observed that "[i]n civil proceedings the courts have, in the interests of truth and justice, displayed understandable readiness to impose noncriminal sanctions for refusal to submit to pretrial discovery on the basis of the privilege . . . ." See also Woodward-Clyde Consultants v. Chem & Pollution Scis., Inc., 105 N.J. 464, 475 (1987) (noting that when a defendant invokes the privilege against self-incrimination, a "trial court [may] . . . impose[] alternative sanctions such as staying discovery or precluding defendant from offering affirmative proof at trial."). There, the Court differentiated plaintiffs who invoke the right against self-incrimination to avoid pretrial discovery to avoid dismissal from defendants, like Talafous, who invoke the same right because he is in court involuntarily. Mahne, 66 N.J. at 59. The Court explained, "courts have generally declined to strike [a defendant's] answer and thus permit a default judgment . . . although they have, in seeking proper balance, been willing to impose lesser sanctions." Ibid.

In Whippany Paper Bd. Co. v. Alfano, 176 N.J. Super. 363, 374-75 (App. Div. 1980), we observed that it is an appropriate remedy, in the face of a defendant's claim of the privilege against self-incrimination, to preclude the

9

party claiming the privilege from testifying at trial. In that case, we also explained that if a plaintiff convinces a trial court that he or she is unable to "proceed without discovery from defendants," the "judge may well be justified in striking the answer of a defendant claiming the privilege against self-incrimination and entering judgment against him without proof of the claim or perhaps on the basis of less persuasive evidence that might otherwise be required." Id. at 375.

In this case, plaintiff provided defendant nineteen separate checks in connection with the administration of the estate. In return, defendant never provided plaintiff any statement, invoice, or correspondence as to the value or nature of the services provided. Upon hearing plaintiff's testimony and assessing his credibility, the trial judge determined she "[could not] speculate what services were performed by [defendant] or what the value of those services might be." The judge reasonably determined that plaintiff had no knowledge of the value of any services provided by defendant nor did defendant explain what work he provided.

After establishing plaintiff proved a prima facie case that the estate was entitled to $345,310.61, it became defendant's burden to prove the sum was less. Defendant provided limited insight as to the value of work he provided in

connection with the limited interactions about which plaintiff testified. We discern no abuse of the court's discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2744-18T3